UNITED STATES, Appellee,

v.

Lester H. BULLINGTON, Private First
Class, U. S. Army, Appellant.

Misc. Dkt. No. 82–09.
SPCM 15952.

U. S. Court of Military Appeals.

June 14, 1982.

For Appellant: *Captain Thomas R. Peppler* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major Joyce E. Plaut* (on petition).

For Appellee: *Captain Kenneth H. Clevenger* (argued); *Colonel R. R. Boller, Major John T. Meixell* (on petition).

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was convicted by special court-martial of unauthorized absences of 11 and 13 days, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. His sentence to a bad-conduct discharge, confinement at hard labor for 2 months, and reduction to Private E–1 was approved by the convening authority. However, the Court of Military Review determined that the military judge should have informed the court members that the bad-conduct discharge could be imposed only because the aggregate authorized confinement was 6 months. Since the court found that this error might be prejudicial, it set aside the sentence subject to this qualification:

A rehearing on the sentence may be ordered by the same or a different convening authority. If it is determined that such rehearing is impracticable, the convening authority may, without a rehearing, reassess the sentence (set aside subject to this qualification) and approve one that does not include a bad-conduct discharge.

By this time appellant was at Fort Leavenworth, Kansas, so the Commanding General of the Combined Arms Center and Fort Leavenworth took this further action on the case:

[U]pon reassessment, the sentence is approved. However, the bad conduct discharge is changed to the lesser punishment of confinement at hard labor for two months (thereby making the period of confinement at hard labor four months). The sentence as changed is approved and will be duly executed. The United States Army Retraining Brigade, Fort Riley, Kansas, is designated as the place of confinement and the remaining confinement will be served therein or elsewhere as competent authority may direct.

Thereafter, the record of trial was examined and determined to be correct in law by a member of the staff judge advocate's office at Fort Leavenworth.

In turn, appellant petitioned the Court of Military Review for extraordinary relief, as he claimed that the action of the convening authority conflicted with that court's decree. The court concluded that they could entertain the petition since "an appellate court has authority to insure that its orders and decisions are carried out properly. *See United States v. Hawkins,* 11 M.J. 4, 6 (C.M.A.1981); *Powis v. Coakley,* 10 M.J. 649 (N.C.M.R.1980)." (Footnote omitted.) However, the Court of Military Review decided that the action taken by the convening authority complied with its decree. It reasoned that

[t]he conversion of the discharge and approval of the sentence as changed, taken in the context of the staff judge advocate's recommendation and the entire action, did not amount to an approval of the bad-conduct discharge. *Robison v. Abbott,* 23 U.S.C.M.A. 219, 49 C.M.R. 8 (1974).

The convening authority's action did not increase the punishment even though

the confinement portion was doubled. Overall it was a lesser sentence than was imposed by the court-martial. 12 M.J. 570, 572.

Confronted with this determination by the court below, appellant then petitioned this Court to grant review.

I

At the outset, the Government insists that we lack jurisdiction to entertain this petition in light of the action taken by the convening authority upon remand. We disagree, for we conclude that jurisdiction is clearly conferred upon us by the Uniform Code of Military Justice.

Article 66(b) of the Code, 10 U.S.C. § 866(b), directs the Judge Advocate General to "refer to a Court of Military Review the record in every case of trial by court-martial in which the sentence, as approved, . . . extends to . . . bad-conduct discharge." Article 67, UCMJ, 10 U.S.C. § 867, directs that "[t]he Court of Military Appeals shall review the record in . . . all cases reviewed by a Court of Military Review in which, upon petition of the accused and on good cause shown," we have "granted a review." Article 67(b)(3). "In any case reviewed by it, the Court of Military Appeals may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the" court below. Article 67(d).

■ In the case at bar, appellant's petition fits within the statutory language. Originally, the convening authority approved the findings and the sentence, which included a bad-conduct discharge. The Court of Military Review did review the case and in its original decision affirmed the findings and set aside the sentence as incorrect in law. At that point, all the conditions imposed by Article 67(b)(3) and (d) had been met. So far as we can determine from the record of trial and allied papers, no effort was made after the origi-

nal decision of the Court of Military Review to serve a copy of the decision upon Bullington and advise him of his right to petition our Court for review.[1] However, even at that point, he would have been entitled to petition our Court for review of the action by the court below and to contend that the remedial action taken by the Court of Military Review was inadequate to cure the legal error which it had discovered or that for other reasons more sweeping remedial action was required. Since Bullington then had a statutory right to petition our Court—even if he was not expressly advised of that right at the time—nothing in the Code allows him to be divested thereof by subsequent action of the convening authority or of the Court of Military Review.

■ In line with this view, we often have reviewed cases on the accused's petition where, as a result of review by the Court of Military Review, the sentence has been reduced and the reduced sentence would not have met the requirements of Article 66 if such a sentence had been approved by the convening authority in the first instance. Certainly Congress did not intend that our jurisdiction be diminished because, as in the case at bar, the Court of Military Review did not reassess the sentence itself but instead remanded to the convening authority to take action on the sentence.

■ Appellant's right to petition us for review is even clearer since the present case was reviewed by the Court of Military Review not once—but twice. In rejecting the Government's argument that under Article 66 it had no jurisdiction to review the action taken by the convening authority upon remand, the Court of Military Review correctly reasoned that it was empowered by the Code to assure that its earlier decision had been enforced. *See United States v. Hawkins, Powis v. Coakley,* both *supra.* However, regardless of the rationale upon which the court below relied, the important thing is that it did review the case a second

---

1. *See* Article 67(c), Uniform Code of Military Justice, 10 U.S.C. § 867(c). On the other hand, when the Court of Military Review rendered its second decision after the convening authority had acted on remand, that decision was served upon appellant and he was advised of his right to petition for review under Article 67(b)(3).

time. Article 67(b)(3) allows a petition "in ... *all* cases reviewed by a Court of Military Review." (Emphasis added.) The inclusiveness of this statutory language is limited only by the express restriction of Article 69, UCMJ, 10 U.S.C. § 869, that, if a record of trial is reviewed by a Court of Military Review pursuant to that article, "there may be no further review by the Court of Military Appeals except" upon an issue certified by the Judge Advocate General.[2] The negative implication of this language is that Congress intended no other exception to the all-inclusive language of Article 67(b)(3). *Cf. United States v. Caprio,* 12 M.J. 30 (C.M.A.1981); *United States v. Redding,* 11 M.J. 100 (C.M.A.1981). Accordingly, since the court below reviewed the record of trial on appellant's petition for extraordinary relief, we may entertain a petition under Article 67(b)(3).[3]

The present case is quite different from *Robison v. Abbott,* 23 U.S.C.M.A. 219, 49 C.M.R. 8 (1974), on which the Government relies. There—upon his initial review of the case—the convening authority changed the adjudged bad-conduct discharge to the lesser punishment of confinement for 2 months, partial forfeitures of pay for 6 months, and reduction to the grade of seaman recruit. Since the convening authority had never approved a bad-conduct discharge,[4] our Court apparently concluded

that the case did not fall within Article 66 and was not within our potential jurisdiction; so the accused's petition for a writ of habeas corpus was denied. Contrariwise, in the case at bar, the convening authority approved the punitive discharge which the court-martial had adjudged, and in due course the Court of Military Review reviewed the case pursuant to Article 66. Furthermore, although the convening authority converted the discharge into a lesser punishment, this action was not taken at the outset but only in response to a decision by the Court of Military Review that the bad-conduct discharge could not stand. In short, in the present case jurisdiction under Article 66 was properly exercised; and so, even if *Robison v. Abbott, supra,* was properly decided, it has no bearing here and the petition need not be dismissed.

## II

The Government also insists that, even if we have jurisdiction to entertain appellant's petition, we should decide against him on the merits. Appellate government counsel argues that the interpretation by the Court of Military Review of its own decree should be conclusive upon us. Therefore, since the court below has ruled that the convening authority complied with its original decision in the case, we are precluded from adopting a different construction of that decision.

---

2. Of course, it is arguable that when a case reviewed by the Court of Military Review under Article 69, UCMJ, 10 U.S.C. § 869, is transmitted to the Court of Military Review for consideration under Article 66, UCMJ, 10 U.S.C. § 866, and then is certified by the Judge Advocate General under Article 67(b)(2), the accused may be entitled to cross-petition for review. This issue was raised in *United States v. Kelly,* 12 M.J. 183 (C.M.A.1981).

3. Someone else must agree with this interpretation, for appellant was served with the second decision of the Court of Military Review and advised of his right to petition our Court.

4. In *Robison v. Abbott,* 23 U.S.C.M.A. 219, 49 C.M.R. 8 (1974), the convening authority's action began with a statement that the sentence was approved but then he proceeded to commute the bad-conduct discharge to confinement and forfeiture to reduction; under these circumstances we concluded that this did not constitute approval of the bad-conduct discharge

for purposes of Article 65, UCMJ, 10 U.S.C. § 865. Perhaps *Robison v. Abbott, supra,* deserves reexamination in light of the literal wording of Article 66, for if approval of a punitive discharge provides the basis for conversion of the sentence, in a very real sense, the sentence should be viewed as extending to a bad-conduct discharge. Unlike the power to commute a sentence which is expressly conferred upon the President and the Secretary, Under Secretary or the Assistant Secretary of a military department, *see* Article 71, UCMJ, 10 U.S.C. § 871, a convening authority's power to convert a sentence from a punitive discharge to confinement has no express statutory basis. Assuming arguendo that, in the proper exercise of his Article 36, UCMJ, 10 U.S.C. § 836, powers, the President has enabled convening authorities to commute sentences, we question whether commutation can be used as a means to circumscribe appellate review that otherwise would take place under Articles 66 and 67.

Admittedly, a particular tribunal probably has the best idea of what it means by its own decisions. However, it must be recalled that in this case the decision by the Court of Military Review was in response to what it perceived to be an instructional error that tainted the issuance of a bad-conduct discharge. Since the Judge Advocate General did not seek to contest this ruling by certifying the question pursuant to Article 67(b)(2), the law of the case is that the bad-conduct discharge should not have been adjudged by the court-martial.[5]

While the Court of Military Review may well be aware of the options that it intended to allow the convening authority when it remanded the case for his further action, we are entitled to determine whether some of those options may offer only inadequate relief to an accused from the legal error involved. Thus, even if the convening authority did comply with the original decision by the Court of Military Review, we still may review under Article 67(b)(3) whether such acts of compliance constitute an adequate antidote for the error committed at trial. Furthermore, while we concur fully with the position of the Court of Military Review that a court has jurisdiction to enforce its own decrees, that power does not signify that an arbitrary interpretation by a court of an earlier decree cannot be reviewed by a higher court. Indeed, if a decree is interpreted and enforced in a manner totally at odds with its plain meaning, the person subject to that decree might justly complain on due process grounds that he lacked notice of the obligations to which the decree had subjected him.

### III

If the bad-conduct discharge had been properly adjudged and had been converted by the convening authority to 2 months' confinement at hard labor, we would have no question about the validity of his action. The difficulty we have with the convening authority's action in the present case is that it gives effect to the bad-conduct discharge which the Court of Military Review ruled should not have been adjudged by the court-martial. Thus, the commutation perpetuates the original error, instead of correcting it. Indeed, as a predicate for the conversion of the discharge into confinement, the convening authority found it necessary to approve the bad-conduct discharge, even though the Court of Military Review had already held that this discharge should not be approved unless it was adjudged at a rehearing on sentence. Although the court below took the view that the convening authority acted in accordance with its decree, we do not perceive how this turning of nothing into something conforms to the premise of the original decision—which now is the law of the case—that the bad-conduct discharge must be set aside because of instructional error.

In civilian courts, when there has been an error at trial which affects the sentence, the case is sent back to the trial court for resentencing. Military justice also authorizes a rehearing on sentence at the trial level; but, in addition, it permits a functional equivalent of resentencing in the form of reassessment of sentence by a convening authority or the Court of Military Review. The premise for the reassessment is that the result ultimately reached is a sentence which the court-martial might have adjudged if the original error had not occurred at trial. However, where commutation of a sentence is involved, that assumption may be dubious. Thus, in the case at bar, we cannot say with any certainty that if the court members had not adjudged a bad-conduct discharge,[6] they

---

5. In a recent case, *United States v. Timmons*, No. 40,646, the Government argued that we should overrule the cases on which the Court of Military Review relied and which hold that, when a bad-conduct discharge is authorized only because of prior convictions, the court-martial members must be informed to that effect. *See, e.g., United States v. Yocum*, 17 U.S.C.M.A. 270, 38 C.M.R. 68 (1967).

6. Of course, the Court of Military Review never would have had occasion to set aside the sen-

would have added at least 2 months' confinement—or any confinement—to the sentence.

Under our view a convening authority is not left helpless, for he can order a rehearing on sentence, at which the court-martial can adjudge any sentence of no greater severity than that which was originally approved by the convening authority. While the original government witnesses may not be available, their recorded former testimony usually will be admissible. Moreover, although an accused will have an opportunity to offer new evidence in extenuation and mitigation, even that burden on the Government has been lessened by recent amendments to the Manual for Courts-Martial. *See* para. 75*e*, Manual for Courts-Martial, United States, 1969 (Revised edition) (Change 5). However, regardless of possible inconvenience to the Government which the alternatives present under the circumstances of the case at bar, we cannot uphold a commuted sentence which is infected by the same error that caused the sentence originally adjudged to be set aside.

### IV

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army to submit to that Court for further proceedings consistent with this opinion.

Judges COOK and FLETCHER concur.

---

tence to a bad-conduct discharge had they not concluded that, absent the instructional error, a bad-conduct discharge might not have been imposed.