UNITED STATES

v.

Clyde P. BOUDREAUX, 435 56 4627, First Lieutenant (0-2), U.S. Marine Corps.

NMCM 74 2361C.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 13 March 1974.

Decided 10 July 1991.

LT Tamara A. Massengale, JAGC, USNR, Appellate Defense Counsel.

William H. Forman, Jr., Civilian Defense Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

En Banc.

FREYER, Judge:[1]

## I—STATEMENT OF THE CASE

### A. TRIAL

In early 1974, the appellant was brought to trial for numerous offenses and was found guilty by a military judge, contrary to his pleas, of five specifications of violating lawful general regulations (Charge II [Article 92, 10 U.S.C. § 892], Specifications 1–4: borrowing money from enlisted men, and Specification 5: accepting a non-interest-bearing loan from a Marine Corps contractor with whom he dealt in an official capacity); signing a false official affidavit with intent to deceive (Additional Charge I [Article 107, 10 U.S.C. § 907], Specification); and falsely swearing to the same affidavit (Additional Charge II [Article 134, 10 U.S.C. § 934], Specification). He was sentenced to be dismissed from the service.

### B. INITIAL REVIEW

After approval of the findings of guilty and the sentence by the convening authority, the case reached this Court for the first time. Our decision, *United States v. Boudreaux*, No. 74 2361 (N.C.M.R. 19 August 1975) (hereinafter *"Boudreaux I"*), after rejecting claims of unlawful command influence, denial of the right to a speedy trial, inadequate Article 32 investigation, and multiplicity between Additional Charges I and II, affirmed the findings of guilty of Charge II and Specification 5 thereof and Additional Charges I and II and their single Specifications, set aside the findings of guilty of Specifications 1–4 of Charge II (on the ground that the military judge had erroneously permitted cross-examination of the appellant on the offenses alleged in those specifications, as to which he had not testified on direct examination), set aside the sentence, and ordered a com-bined rehearing on Specifications 1–4 of Charge II and the sentence, or, in the alternative, on the sentence only on the basis of the affirmed findings of guilty.

### C. REHEARING

The convening authority opted for the combined rehearing. At that rehearing, held on 2 December 1975, the appellant pled guilty to Specifications 1–3 of Charge II and not guilty to Specification 4, was found in accordance with his pleas, and, on the basis of the findings of guilty previously affirmed by this Court and the additional findings of guilty entered by the court-martial on rehearing, was sentenced, this time by members, to be reprimanded, to pay a fine of $1,000.00, and to lose 2,950 numbers on the appropriate lineal list.

### D. INITIAL REVIEW OF REHEARING

The convening authority approved the new findings of guilty and the new sentence, ordered the sentence executed, and forwarded the record of trial to the Judge Advocate General, who did not, however, return it to this Court but, because the sentence on rehearing included none of the punishments bringing it within the jurisdiction of this Court, elected to cause it to be reviewed in his Office pursuant to Article 69, UCMJ, 10 U.S.C. § 869. After a determination by the Deputy Assistant Judge Advocate General for Military Justice that the findings of guilty and the sentence were correct in law and fact (sic), the record was sent to the U.S. Navy Appellate Review Activity (NAVARA) (now the U.S. Navy–Marine Corps Appellate Review Activity [NAMARA]) for the ministerial act of "finish-filing" in the Suitland, Maryland, Federal Records Center.

1. By way of disclosure of prior involvement, the author judge, while serving in 1986 as Assistant Director of the Military Justice Division, Office of the Judge Advocate General, upon being consulted about this case by the Head of the Review Branch, made the decision to return the case to this Court for completion of Article 66 review and oversaw preparation of the 1 July 1986 correspondence accomplishing that action. Such involvement was limited exclusively to deciding which channel of appellate review was proper, as between Articles 66 and 69, an issue now finally determined by the U.S. Court of Military Appeals; it did not extend to the inconsistent 4 March 1987 direction for review under Article 69, nor to any substantive issues, nor to any procedural issues now before this Court.

## E. SUBSEQUENT EVENTS LEADING TO CURRENT ARTICLE 66 REVIEW

According to legend, a clerk at NAVARA was so offended by the review of this case in the Office of the Judge Advocate General under Article 69 that she clandestinely refused to "finish-file" it in Suitland and, instead, deposited it in a box marked "Questionable Cases," where it remained for approximately ten years, until it was discovered in early 1986 during the "Promulgation Project" described in *United States v. Myers,* 28 M.J. 191 (C.M.A.1989). It was taken back to the Military Justice Division of the Office of the Judge Advocate General for a decision as to its final repose. This time, it was decided by the incumbents of that Division that review under Article 69 had been incorrect, and so the record was, on 1 July 1986, at long last returned by the Judge Advocate General to this Court "for completion of appellate review" under Article 66, 10 U.S.C. § 866.

Regrettably, a majority of this Court balked, as is reflected in its opinion in *United States v. Boudreaux,* 26 M.J. 879 (N.M.C.M.R.1988) (hereinafter "*Boudreaux II*"), and had to be ordered to perform its Article 66 review by the U.S. Court of Military Appeals, *Boudreaux v. U.S. Navy–Marine Corps Court of Military Review,* 28 M.J. 181 (C.M.A.1989) (hereinafter "*Boudreaux III*"), which granted the appellant a writ of mandamus, thereby, in effect, reversing *Boudreaux II* and sustaining the 1 July 1986 action of the Judge Advocate General of the Navy.

Final repose, however, continues to prove elusive. During consideration of the appeal mandated by *Boudreaux III,* it was brought to the attention of this Court that, before the 1975 rehearing was held, the appellant, apparently unbeknownst to anyone else involved in the rehearing,[2] had placed in military channels a petition for review by the U.S. Court of Military Appeals of *Boudreaux I,* this Court's 1975 decision affirming some of the findings of guilty, setting aside others and the sentence, and ordering a combined rehearing; and that not until two days after the rehearing was completed did the U.S. Court of Military Appeals dismiss the appellant's petition for review as premature, 23 U.S.C.M.A. 728 (1975)[3]. Thus, the petition for review was pending on the date that the rehearing was conducted, although it appears that the rehearing, and the filing and dismissal of the petition for review, took place entirely independently of and without reference to one another.

In a decision dated 21 May 1990, a panel of this Court, none of whose members is presently serving on the Court, applied the familiar doctrine that the filing of a petition for review immediately transfers jurisdiction over the case to the higher court and, in the process, divests the lower courts of jurisdiction to proceed, citing *Goodman v. Secretary of the Navy,* 21 U.S.C.M.A. 242, 45 C.M.R. 16 (1972), and the venerable *United States v. Jackson,* 2 U.S.C.M.A. 242, 45 C.M.R. 16 (1953). As a result, they reached the conclusion that the court-martial which conducted the rehearing had been without jurisdiction to do so, and that the resulting findings and sentence were null and void.

Suspecting that the panel might have overlooked an exception to the transfer of jurisdiction doctrine, a majority of this Court, on 3 July 1990, granted the government's motion to reconsider the 21 May 1990 panel decision *en banc* and specified issues framing the jurisdictional issue, as we saw it. That action was followed by the filing of supplementary assignments of error by the appellant. Since our 3 July 1990 order granting the government's motion to reconsider effectively annulled the 21 May

---

**2.** At least we find nothing in the record of the rehearing to indicate that anyone was aware of it. Specifically, we note that the defense offered no objection to proceeding with the rehearing while the petition was pending.

**3.** We note nostalgically the successful Government Motion to Dismiss Petition for Grant of Review prepared and submitted by appellate counsel of that era. Had the contents of that high-quality pleading been heeded by their superiors and successors, the past five years of appellate litigation in this case could, perhaps, have been avoided.

1990 panel decision on the rehearing (but not the 19 August 1975 panel decision in *Boudreaux I*), we undertake a fresh examination of the jurisdictional issue with respect to the rehearing. Our 3 July 1990 order in no wise derogated from the continuing validity, or effected a reconsideration, of *Boudreaux I*; consequently, as a technical matter, no issues regarding the intrinsic correctness of the affirmed findings are presently before us, and the resolutions of the *Boudreaux I* panel that the proceedings were not tainted by command influence, that the appellant was not denied a speedy trial, and Article 32 investigation was adequate are the law of the case. Since the rehearing did result in new findings of guilty as well as a new sentence, we have, nevertheless, out of an abundance of caution, satisfied ourselves beyond a reasonable doubt that neither any of the findings nor the sentence was adversely affected by command influence. *United States v. Thomas*, 22 M.J. 388 (C.M.A.1986).

## II—JURISDICTION TO CONDUCT REHEARING

### A.

It is evident from the superseded panel decision, and from the pleadings filed in connection therewith, that a case directly on point and apparently controlling, namely, *United States v. Best*, 6 U.S.C.M.A. 39, 19 C.M.R. 165 (1955), (hereinafter *"Best II"*), was completely missed. In the process of reviewing the government's motion for reconsideration, *Best II* was discovered by a judge of this Court. Although we deem *Best II* to be indeed controlling, we deem it also advisable to address subsequent cases so as to explain why we believe that both *United States v. Best*, 4 U.S.C.M.A. 581, 16 C.M.R. 155 (1954), (hereinafter *"Best I"*), and *Best II* remain as valid precedents even after *United States v. Bullington*, 13 M.J. 184 (C.M.A.1982). In so doing, it is necessary to keep in mind the respective contexts in which *Best I* and *Bullington* arose, and the semantical distinction between jurisdiction over a case and jurisdiction over a particular appeal,

the latter raising practical considerations of finality more akin to "ripeness" than pure jurisdiction. *See Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Thus, the real question is not whether, but *when*, the further exercise of such appellate jurisdiction is appropriate.

### B.

In *Best I*, the court held that it had no jurisdiction to entertain a petition to review an interlocutory ruling of the Board of Review ordering a partial rehearing on findings and a rehearing on the sentence. Even in so doing, the court, nevertheless, made clear that it was not negating appellate jurisdiction over the case itself, for, although writing in jurisdictional terms, the court concluded its analysis with the sentence: "Consequently, the accused's petition for review of the case by this Court was prematurely filed." 4 U.S.C.M.A. at 585, 16 C.M.R. at 159.

Not only does the term "prematurely filed" more strongly bespeak "ripeness" than jurisdiction, but the court proceeds to reaffirm its ultimate jurisdiction over the case, as follows:

Although we propose to dismiss the present petition, we desire to make it clear that the accused still has the right to file a new petition as soon as final and complete action on the case is taken by the board of review. Such a petition may properly bring up for review all matters of law presented and acted upon by the board of review, including the correctness of its action in ordering a rehearing on one of the charges, while at the same time holding in abeyance its decision with respect to an appropriate sentence. He may also raise the question, presented in the instant petition, as to whether the board of review was correct in holding that the accused was denied effective assistance of counsel on one charge but not on the others. Of course, we express no opinion as to the legal correctness of any of the present determinations of the board of review. Moreover, we express no opinion regard-

ing our power to review a case should a board of review arbitrarily refuse to consider a case before it, or to take action thereon as required by the Uniform Code. Certainly, under traditional practices, a wide variety of action is available to an appellate court to protect and preserve the integrity of a trial. The motion to dismiss the accused's petition for review is granted, without prejudice, however, to his right to file a new petition upon completion of the board of review's consideration of the entire case. The record of trial is returned to The Judge Advocate General of the Army for action consistent with this opinion.

*Id.* (citations omitted).

This was, of course, precisely the basis for the 1 July 1986 action of the Judge Advocate General of the Navy returning this case to this Court "for completion of appellate review under Article 66[,]" and both *Bullington* and *Boudreaux III* are manifestations of the "wide variety of action" available "under traditional practices" "should a [court of military] review arbitrarily refuse to consider a case before it."

Viewed in this light, neither *Bullington* nor *Boudreaux III* plows new ground, although the opinions in both cases are instructive in the application of the general principles. There is, however, one sentence in the *Bullington* opinion which, if not placed in proper context and perspective, could undermine *Best I* and *Best II* and thereby seriously threaten "the orderly administration of the appellate process" recognized as a desideratum in *Boudreaux III*. Before dissecting *Bullington*, however, it is advisable, for purposes of comparison, to consider two cases decided after *Best II*, namely, *United States v. Papciak*, 7 U.S.C.M.A. 224, 22 C.M.R. 14 (1956), and

*United States v. Johnson*, 21 U.S.C.M.A. 270, 45 C.M.R. 44 (1972).

**C.**

In *Papciak*, the Court was faced with a situation where the Board of Review had determined that the staff judge advocate's review was prejudicially erroneous, and, as a result, the Board of Review affirmed nothing, set aside the convening authority's action, and returned the case for a new review and action by a different convening authority. It imposed no conditions in its remand on the action that such convening authority might take. The Judge Advocate General appealed this decision by certification, and the accused-appellee moved to dismiss the certificate, citing *Best I*. Whereas, in *Best I*, the Board of Review's partial affirmance and other terms of its remand exerted continuing influence over the proceedings on rehearing, *see United States v. Field*, 5 U.S.C.M.A. 379, 18 C.M.R. 3 (1955); *see also United States v. Montesinos*, 28 M.J. 38 (C.M.A.1989), the action of the Board of Review in *Papciak* was different, because it had the effect of returning the case to the *status quo ante* the convening authority's action, nothing less and nothing more. It, thus, also had the potential to lead to an action by the new convening authority which could, we think, remove the case from appellate review or could surely throw it out altogether.[4] Consequently, Judge Ferguson wrote:

Without specifically taking issue with the holding in Best, supra—which was concerned with a partial disposition of a case by the board of review—if a board of review action disposes of the entire case at that level, such action is appealable to this Court either by certificate or petition. Here the board of review, despite phraseology to the contrary, acted with

---

4. *But see* the sweeping statement comprising the paragraph of *Boudreaux III* beginning: "We hold simply...." in 28 M.J. at 182. We wonder if that statement is really meant to apply to situations like those in *Papciak* and *Johnson,* in which the Board of Review or Court of Military Review takes no action on any of the findings or the sentence and unconditionally returns the case for a new action. We do not mean to intimate that a Court of Military Review decision setting aside the action of a convening authority *in the process of* ordering even a complete rehearing could ever remove a case from appellate review. We deem an order of rehearing, however, to be fundamentally different from *merely* returning a case *unconditionally* for a new convening authority's action, in that the former involves retention of at least a scintilla of jurisdiction, whereas, according to *Papciak* and *Johnson,* the latter does not.

finality on the matter before it. If the case is returned to the same or another convening authority, he certainly is in a position to take whatever action he desires—up to and including disapproval of the entire proceedings. Under these circumstances, the board of review action could not be deemed preliminary, interlocutory, or incomplete.

7 U.S.C.M.A. at 227–28, 22 C.M.R. at 17–18.

In *Johnson,* this Court, again without affirming anything or imposing any conditions on remand, set aside the convening authority's and officer exercising general court-martial jurisdiction's actions and returned the record for a new convening authority's action and such further review as should be indicated. Once again, the Judge Advocate General certified an issue, and the accused-appellee, citing *Best I,* moved to dismiss the certificate. Citing *Papciak,* the U.S. Court of Military Appeals disagreed in the following terms:

> The opinion and action of the Court of Military Review are, indeed, titled, "Interlocutory Order." However, the text of the court's opinion does not disclose any intention to retain jurisdiction over the case. On the contrary, the court set aside both reviewing actions below and directed a "new action," and "such further review" as that action justified. The language in which it effected transfer of the record manifests a purpose to transfer jurisdiction. Judging the court's order by its substance rather than its title, there is no doubt that its decretal provisions effected a final disposition and completed the court's review.

21 U.S.C.M.A. at 271, 45 C.M.R. at 45.

Consequently, we believe that the argument that *Papciak* and *Johnson* have superseded *Best I* and/or *Best II* fails to take into account the critical distinction between a Court of Military Review decision whereby the court orders any kind of rehearing, thereby transferring jurisdiction for a particular purpose while retaining, and thus confirming, appellate jurisdiction over the case generally, *see Montesinos,* or where it affirms anything, thereby also cementing appellate jurisdiction, and a decision where-

by the Court of Military Review merely and unconditionally sets aside the initial action, which is the predicate for appellate review, *in toto,* thereby divesting itself of jurisdiction and making its decision final.

The *Papciak* and *Johnson* cases also stand as applications of the practical concept of finality for jurisdictional purposes, to which we have previously referred. While an appellant, in our system, loses nothing, and can only gain ·or break even, from a new review and action, the Government stands to lose not only its conviction and sentence but also—even if the new action is a reiteration of the old—any forfeitures collected in the meantime and the time value of any reduction in grade. Hence, these cases illustrate how a Court of Military Review decision may be practically final as to, and thus appealable by, one party but not the other. Whatever effect *Boudreaux III* may have on *Papciak* and *Johnson,* as discussed in footnote 4 of this opinion, we find no cause to believe that *Papciak* and *Johnson* have superseded *Best I* and/or *Best II.* In any event, we now turn our attention to *Bullington.*

### D.

In *Bullington,* a special court-martial case, the Court of Military Review affirmed the findings of guilty but set aside the sentence for instructional error and decreed:

> A rehearing on the sentence may be ordered by the same or a different convening authority. If it is determined that such rehearing is impracticable, the convening authority may, without a rehearing, reassess the sentence (set aside subject to this qualification) and approve one that does not include a bad-conduct discharge.

13 M.J. at 185.

In response, the convening authority again approved the sentence but commuted the bad-conduct discharge to additional confinement, whereupon the record was subjected to field review as a "non-BCD" special court-martial. Bullington then petitioned the U.S. Army Court of Military

Review for extraordinary relief, claiming that the convening authority's action conflicted with the court's decree. The Court of Military Review declined to afford the appellant full Article 66 review but entertained the petition to the limited extent of (erroneously) concluding that the convening authority's action had complied with its decree. In disagreeing with the Army Court's refusal to grant full Article 66 review, the *Bullington* court wrote:

In the case at bar, appellant's petition fits within the statutory language [of Article 67]. Originally, the convening authority approved the findings and the sentence, which included a bad-conduct discharge. The Court of Military Review did review the case and in its original decision affirmed the findings and set aside the sentence as incorrect in law. At that point, all the conditions imposed by Article 67(b)(3) and (d) had been met. So far as we can determine from the record of trial and allied papers, no effort was made after the original decision of the Court of Military Review to serve a copy of the decision upon Bullington and advise him of his right to petition our Court for review. [Footnote omitted.] *However, even at that point, he would have been entitled to petition our Court for review of the action by the court below and to contend that the remedial action taken by the Court of Military Review was inadequate to cure the legal error which it had discovered or that for other reasons more sweeping remedial action was required.* Since Bullington then had a statutory right to petition our Court—even if he was not expressly advised of that right at the time—nothing in the Code allows him to be divested thereof by subsequent action of the convening authority or of the Court of Military Review.

13 M.J. at 186 (emphasis supplied).

We have highlighted the sentence that is of the greatest concern to us, especially the words "even at that point, he would have been entitled to petition[.]" If all that was meant by that statement is that, at that point, Bullington's right *eventually* to petition the U.S. Court of Military Appeals

indefeasibly vested (to borrow a term from future interests), the statement is entirely consistent with prior law, as reflected in *Best I* and *Best II.* If, however, what was meant is that a petition would have been "ripe" if filed even before the convening authority had had a chance to comply with the U.S. Army Court of Military Review's decree and the latter had generally reviewed such purported compliance and the legality and appropriateness of the subsequently approved sentence in accordance with Article 66, then a serious conflict with the review process, as we have always known it, including the principles underlying *Best I,* would be engendered. Bearing in mind that the U.S. Court of Military Appeals used the emphatic language it did in *Bullington* in response to a scheme to oust it permanently of jurisdiction over that case (a problem not shared by courts of general appellate jurisdiction, such as the U.S. Supreme Court in *Cohen v. Beneficial Industrial Loan Corporation* ) and to divest Bullington of his indefeasibly vested right to full appellate review, and with an eye on the consequences of a contrary interpretation, as explained below, we very much prefer to interpret the U.S. Court of Military Appeals' language as a strong defense of its own jurisdiction and of Bullington's right to invoke it, separate and distinct from any "ripeness" issue as to precisely when and how such jurisdiction should, as a practical matter, be able to be invoked.

For the same reasons, we are similarly concerned about the implication in *Bullington* that the Army was in some manner derelict in having failed to serve Bullington with a copy of the first Court of Military Review decision setting aside his sentence and in having failed to advise him of a right to petition therefrom. The Manual for Courts–Martial, United States, has never provided for service of a Board of Review or Court of Military Review decision which sets aside the sentence, *see* Rule for Courts–Martial (R.C.M.) 1203(c)(2), Manual for Courts–Martial, United States, 1984; and, for whatever it may be worth, the Discussion following R.C.M. 1203(d)(2) in

the post-*Bullington* Manual for Courts–Martial, United States, 1984, flatly states:

> The accused may petition the Court of Military Appeals for review, as to any matter of law, of any decision of the Court of Military Review except: ... (2) a case in which the Court of Military Review has set aside the sentence....

### E.

If, as seems only too likely, the comment in *Bullington* about serving the decision of the Court of Military Review and advising Bullington of his right to appeal refers to the promulgation procedure prescribed in Article 67(c), 10 U.S.C. § 867(c) and R.C.M. 1203(d), it would not only revolutionize current and prior practice but also raise a very troublesome question: *Best I* expressly contemplates that, when a case in which a rehearing was ordered by a Court of Military Review ultimately comes before the U.S. Court of Military Appeals after review of the rehearing by the Court of Military Review that ordered it, one of the issues that the accused may raise is that the rehearing was improperly ordered; and, of course, where some of the findings from the first trial were affirmed at the time the rehearing was ordered, another of the issues that the accused may raise in the U.S. Court of Military Appeals is the legal correctness of those findings.

If, however, as intimated in *Bullington,* a Court of Military Review decision affirming some findings, reversing others, setting aside the sentence, and ordering a combined rehearing is immediately appealable by petition to the U.S. Court of Military Appeals, may the government, by following the Article 67(c) and R.C.M. 1203(d) promulgation procedure and waiting sixty days, force the accused to seek review of any affirmed findings and the order of rehearing at that time or be forever barred by the doctrine of finality or *res judicata* from raising these issues during any later review of the rehearing? Or does the accused get to pick the time when these matters are reviewed? Or can he have them reviewed more than once?

### F.

Lest the focus of this opinion be lost, it is well to refocus on the central issue, which is whether or not the court-martial which held the rehearing ordered by this Court in the appellant's case was divested of jurisdiction to conduct said rehearing by reason of the pendency of the appellant's petition for review when the rehearing took place, followed by dismissal of the petition as "premature."

■ The law is clear that filing of a petition for review divests lower courts and reviewing authorities of jurisdiction, unless the filing of the petition occurs at an interlocutory stage of the case, *Best II,* causing it to be "premature"; *Papciak* and *Johnson,* in the distinction they draw between themselves and *Best I,* make perfectly clear why orders of rehearing are interlocutory, non-final orders. *Bullington* suggests that an accused is entitled to petition as soon as the Court of Military Review orders a rehearing; yet, in every case, including this one, of which we are aware but one, which will be discussed below, the U.S. Court of Military Appeals has *dismissed* the petition in like circumstances, and that includes *United States v. Young,* 14 M.J. 233 (C.M.A.1982) (summary disposition), decided when the ink on *Bullington* was scarcely dry. It should be remembered that the issue involves, not the jurisdiction of the U.S. Court of Military Appeals over a particular case, but merely at what stage of that case a petition will lie.

### G.

As it turns out, this is no small matter to "the field," for we shudder to think of the impact on rehearings, which are usually difficult enough under the best of circumstances, and on the intermediate appellate process generally, if interlocutory orders of rehearing by a Court of Military Review were subject to the time-consuming promulgation and petition process, or, worse yet, if a manipulative accused could disrupt a rehearing about to begin or even in progress by wafting a last-minute petition to review the order of rehearing to the U.S. Court of Military Appeals and, thereby,

strip the court-martial of its jurisdiction to proceed with the rehearing.[5]

Perhaps the government could protect itself from such an uncontrollable and inconvenient loss of jurisdiction by following the Article 67(c) and R.C.M. 1203(d) promulgation procedure and waiting another sixty days as the lesser of two evils, but, as suggested in sub-part E, the effects of employing that procedure at this interlocutory stage are by no means certain.

There is an obvious consistency among *Best I, Best II,* the Code, and the Manual, designed to prevent just such chaos in the intermediate appellate process, which, in our view, should not lightly be disturbed, and this is especially true when there is absolutely no need to do so, because the U.S. Court of Military Appeals' ultimate appellate jurisdiction over the case is guaranteed by *Best I* and *Boudreaux III,* while any necessary emergency intervention during the interlocutory stages can be via an extraordinary writ.

### H.

The one case, referred to above, in which a petition was accepted at an interlocutory stage, and in which chaos predictably ensued, is *United States v. Wilson,* 20 M.J. 335 (C.M.A.1985). In order to understand the chronology of events in that case more fully than is possible from the *per curiam* opinion, we obtained, with the gracious assistance of Ms. Mary Dennis, Deputy Clerk of the U.S. Army Court of Military Review, various documents from the record of proceedings in *Wilson,* which, after affording the parties an opportunity to be heard in opposition, we have ordered attached to the record on appeal in this case, so that we may consider them.

In *Wilson,* after the U.S. Army Court of Military Review had affirmed the findings and, with a minor adjustment, the sentence in Wilson's special court-martial, Wilson petitioned, and the U.S. Court of Military Appeals remanded for consideration of a command influence issue not previously raised. In response, the Army Court again affirmed the findings but set aside the sentence and ordered a rehearing thereon by a different convening authority. The rehearing on sentence was held on 6 February 1985 and resulted in a sentence not including a bad-conduct discharge, which was acted upon by the convening authority on 17 April 1985; in the meantime, however, Wilson filed a second petition, which was docketed in the U.S. Court of Military Appeals on 20 February 1985.

Had the government appellate counsel in *Wilson* proceeded in accordance with *Best I* and *Young,* they would have moved at once to *dismiss* the 20 February 1985 petition as "premature." Instead, they argued, according to the published opinion, that the case should be *remanded* because the convening authority had not yet acted on the sentence adjudged upon the rehearing and so the case was not ripe for U.S. Court of Military Appeals consideration. (Insofar as the motion to remand implied recognition that the second petition had been effective to transfer jurisdiction over the case to the U.S. Court of Military Appeals in the first place, it may be deemed procedurally inconsistent with *Best II.* It also strikes us as odd that, while the U.S. Court of Military Appeals accepted the petition and had the case on its docket for nearly eight months, the court observed in a footnote: "The record of trial has not been filed with this Court.") Whether because, in the interim, the convening authority did act, or for some other curious reason, government appellate counsel later moved to withdraw the motion to remand and, instead, moved to dismiss the petition on the ground that the sentence adjudged upon the rehearing precluded appellate review. That contention, of course, flew right in the face of *Bullington,* as well as *Best I,* and got the rebuff it deserved; but that is not the aspect of *Wilson* that interests us.

---

5. Nothing herein is intended to address the availability, at any stage, of extraordinary proceedings, recognized even in *Best I,* which do not automatically transfer jurisdiction and, therefore, in the absence of a stay, do not interfere with matters in progress. Consequently, the jurisdiction of the U.S. Court of Military Appeals could always be invoked to obtain needed relief, albeit not necessarily by a premature Article 67 petition.

What does interest us about *Wilson* is that, after denying both the motion to dismiss the petition and the motion to withdraw the motion to remand, the court proceeded to grant the motion to remand to the Army Court and returned the case to the Judge Advocate General of the Army "for submission to an appropriate convening authority (footnote omitted) for review under Article 64...." The omitted footnote states simply: "We have not been informed whether the convening authority already has acted in the present case."

Our chronology reveals that the convening authority had, indeed, already acted, but that he did so *after* the petition had been filed and docketed in the U.S. Court of Military Appeals and *before* that Court disposed of it; in other words, while the petition was pending. Thus, it would appear that, if the petition was proper, it would have divested the convening authority of his power to act on the record of the rehearing, because jurisdiction would have been transferred to the U.S. Court of Military Appeals. Not only to us do the placement and text of this *Wilson* footnote strongly imply that the U.S. Court of Military Appeals was prepared to accord validity to a convening authority's action taken while this premature petition was pending, but they did also to the Army Court, which accepted the case on remand, without further remanding it to the convening authority, on the ground that the convening authority had already acted.

### I.

Consequently, while we are uncomfortable on technical grounds with certain phraseology in *Bullington* and *Wilson,* we view *Wilson* as generally supportive of the *Best II* principle that the filing of a petition in a case which is still in an interlocutory stage does not transfer jurisdiction, or at least does not transfer jurisdiction so completely as to divest inferior tribunals or reviewing authorities of the powers that it would otherwise be appropriate for them to exercise at the time. The post-*Bullington* summary disposition in *Young* and the "*Cf.*" citation of both *Young* and *Best I* in *United States v. Tucker,* 20 M.J. 52

(C.M.A.1985), further reassure us that this is still the law, and the summary dismissal of our appellant's petition as premature in 1975 would also seem to establish it as the law of the case.

### III—HOLDING AND DISPOSITION

█ We, therefore, hold that the court-martial which conducted the rehearing at which the new findings and the sentence now before us were adjudged was not automatically divested of jurisdiction by the appellant's unpublicized filing of his premature petition for review, and that the rehearing was a valid legal proceeding conducted by a court-martial having the requisite jurisdiction over the appellant and the subject matter.

█ Those new findings of guilty and the sentence which were adjudged at the rehearing on 2 December 1975, as approved on review below, are affirmed. Although we are precluded by our order of reconsideration from setting aside any of the findings of guilty affirmed in *Boudreaux I,* we believe that, in accordance with the distinction drawn in *United States v. Sorrell,* 23 M.J. 122 (C.M.A.1986) (footnote 1), we are not precluded from ordering specifications consolidated. We, therefore, order that Additional Charge I and its Specification be consolidated with Additional Charge II and its Specification. Since the military judge instructed the members that these offenses were multiplicious for sentencing, reassessment of the sentence is not necessary.

### IV—EPILOGUE

A United States Court of Appeals, for example, presumptively has appellate jurisdiction over every case pending in a United States District Court within its judicial circuit, waiting only to be invoked by the filing of a notice of appeal. As indicated by the citations in *Best II,* however, not every notice of appeal will invoke its appellate jurisdiction; the appeal must be from an order or judgment deemed final, and finality is determined, not by legal technicalities, but by the practical effect of the judgment or order. *See Cohen v. Benefi-*

cial *Industrial Loan Corporation;* cf. *United States v. Jacks,* 8 U.S.C.M.A. 574, 25 C.M.R. 78 (1958).

Although the U.S. Court of Military Appeals does not have, *ab initio,* direct appellate jurisdiction over cases originally pending before courts-martial, *Best I, Bullington,* and *Boudreaux III* all establish that the U.S. Court of Military Appeals does have jurisdiction, waiting to be invoked by petition or certification, over all cases which have been reviewed by a Court of Military Review; and, as in the civilian model, it does not derogate from the existence of such jurisdiction in the slightest to recognize a requirement of practical finality before a petition or certificate is deemed sufficient to divest inferior tribunals and reviewing authorities of what would otherwise be their power to act. On the contrary, as we have tried to demonstrate, such a requirement is, we think, essential to maintaining an orderly appellate process.

We, of course, leave to the wisdom of the U.S. Court of Military Appeals the decision on whether or not any judicial chiropractic is needed to align any of the more recent jurisdictional cases with their venerable predecessors. In general, however, we recommend an approach which takes into account the practice, long accepted in both military and civilian jurisprudence, of limiting interlocutory appeals, because of their well-known disruptive and delaying effects on the progress of litigation and their often merely hypothetical and advisory nature.

Chief Judge WILLEVER, Senior Judges MITCHELL, ALBERTSON, and STRICKLAND, and Judges LANDEN, ORR, HOLDER, JONES, and LAWRENCE concur.