UNITED STATES, Appellee,

v.

Clyde P. BOUDREAUX, First Lieutenant
U.S. Marine Corps, Appellant.

No. 67,026.
NMCM 74 2361C.

U.S. Court of Military Appeals.

Argued June 4, 1992.

Decided Sept. 24, 1992.

For Appellant: *Lieutenant Matthew L. Kronisch, JAGC, USNR* (argued); *William H. Foreman, Jr.* (on brief).

For Appellee: *Lieutenant Commander Lawrence W. Muschamp, JAGC, USN* (argued); *Colonel T.G. Hess, USMC* (on brief).

*Opinion of the Court*

COX, Judge:

This case requires us to consider whether appellant's court-martial had jurisdiction to hear his case. For the reasons hereafter stated, we conclude that it did.

The history of First Lieutenant Clyde P. Boudreaux's involvement with the military justice system is well documented in the decision by the United States Navy–Marine Corps Court of Military Review. 33 MJ 649 (1991). His case can be viewed in four parts.

I

Appellant was convicted by general court-martial of various offenses in March 1974, and he was sentenced to be dismissed from the service. His conviction was reviewed by the Court of Military Review pursuant to Article 66(b)(1), Uniform Code of Military Justice, 10 USC § 866(b)(1). In August 1975, that court affirmed his conviction in part, reversed in part, and authorized the convening authority to order a rehearing on the case. Appellant then petitioned this Court for review of the decision on October 31, 1975. The Government moved to dismiss the petition on the grounds that it was premature because final action had not been taken by the lower court. We dismissed the petition on December 4, 1975, on the ground that it was "premature." 23 USCMA 728.

II

Critical to the issue in this appeal, appellant's rehearing was conducted 2 days before this Court dismissed appellant's petition. No objection was made by appellant to the rehearing, and no motion was made for a stay or continuance pending this Court's decision. At the rehearing, appellant was convicted again of most of the offenses before that court-martial and was sentenced to be reprimanded, to pay a fine of $1,000, and to lose 2,950 places on the promotion list. The case was not returned to the Court of Military Review; rather, it was sent directly to the Judge Advocate General of the Navy for review pursuant to Article 69, UCMJ, 10 USC § 869. One can only surmise that it was not returned to the Court of Military Review because the sentence on rehearing was outside the ordinary and mandatory review of that court. The Judge Advocate General affirmed the conviction and sentence. The case was forwarded to the U.S. Navy–Marine Corps Appellate Review Activity for the ministerial act of "finish filing" in the Federal Records Center at Suitland, Maryland.

III

According to the decision below and attributed to "legend," it appears that "a clerk ... was so offended by the review of this case ... that she clandestinely refused

to 'finish-file' it ... and, instead, deposited it in a box marked 'Questionable Cases,' where it remained for ten years." 33 MJ at 651. It was eventually discovered and sent to the Navy–Marine Corps Court of Military Review "for completion of appellate review" under Article 66 on July 1, 1986. *Id.*

The interim appellate history is interesting but not of moment to the question now before us. *See United States v. Boudreaux,* 26 MJ 879 (NMCMR 1988); *Boudreaux v. United States Navy–Marine Corps Court of Military Review,* 28 MJ 181 (CMA 1989). Ultimately, the Court of Military Review affirmed appellant's conviction and sentence on rehearing. 33 MJ 649 (1991).

## IV

At long last, we granted appellant's petition for review. We limited our review to one legal issue:

WHETHER APPELLANT'S REHEARING OF 2 DECEMBER 1975 LACKED JURISDICTION WHEN THE CASE WAS PENDING BEFORE THE COURT OF MILITARY APPEALS ON THE DAY OF THE REHEARING.

Prior to our resolution of the granted issue, we will first look at the military justice system envisioned by Congress in the Uniform Code of Military Justice. Articles 1–140, 10 USC §§ 801–940. We find that it can be likened unto a time-line. The alpha of the line is the commission of an offense by a servicemember; the omega is final review of the court-martial conviction by the Supreme Court of the United States. Where that case lies along the time-line determines what can be done with the criminal prosecution of that offense and who can do it.[1]

A gross simplification of the system will help the uninitiated understand the time-line involved. A prosecution in the military justice system is initiated by the signing of charges under oath. Art. 30, UCMJ, 10 USC § 830; RCM 307, Manual for Courts-Martial, United States, 1984. The charges are investigated and ultimately referred to a court-martial convened by a convening authority. Arts. 32 and 34, UCMJ, 10 USC §§ 832 and 834, respectively; RCM 405, 407, and 601. Upon referral to a court-martial, a military judge and members are detailed to the court-martial. *See generally* Arts. 25 and 26, UCMJ, 10 USC §§ 825 and 826, respectively; RCM 501 and 503. The court-martial retains jurisdiction over the case from the point of referral until the record is authenticated by the military judge, unless the convening authority withdraws the case. Art. 54, UCMJ, 10 USC § 854; RCM 604, 801, 805, 1009, 1104. After the record is authenticated, it is sent to the convening authority who may approve or disapprove any or all of the findings and sentence. Art. 60, UCMJ, 10 USC § 860 (1983); RCM 1104 and 1107. To the extent a sentence "as approved" by the convening authority meets jurisdictional limits set by Congress, a convicted servicemember will have his case reviewed by a Court of Military Review (Art. 66) unless he waives that right (Art. 61, UCMJ, 10 USC § 861; RCM 1110). After review by a Court of Military Review, a servicemember may petition the United States Court of Military Appeals, "on good cause shown," to hear the case. Art. 67(a)(3), UCMJ, 10 USC § 867(a)(3)(1989); RCM 1204. *If* the United States Court of Military Appeals grants an appellant's petition, then the case may be further appealed to the Supreme Court.[2]

There is a lot that can happen to a particular case along the way which moves the case faster or slower along the time-line and in and out of the ordinary sequence of

---

1. As a practical matter, where the record of trial happens to be has a lot to do with "what can be done ... and who can do it."

2. As noted, this description of the court-martial process is a simplification of an otherwise complex system. There are many variables which affect a case such as the type of court-martial to

which the charges are referred, the resulting sentence, and the post-trial action by the convening authority. One extremely interesting variable is that an accused can only seek review by the Supreme Court if the Court of Military Appeals has decided his case. Art. 67a, Uniform Code of Military Justice, 10 USC § 867a.

wickets, or may even send it backwards.[3] Thus, we are often confronted with the question of who has jurisdiction to do what at any particular time.[4] This case is a perfect example.

In an attempt to make it precisely clear who has jurisdiction of a particular case, whether on appeal or otherwise before either a Court of Military Review or the United States Court of Military Appeals, we hold as follows.

■ First, every matter which comes before an appellate court can be viewed as either an interim (interlocutory) or a final appeal. It does not matter if (1) jurisdiction is conferred upon that court by operation of the Uniform Code of Military Justice, such as by Articles 62, 66, 67, or 69; (2) whether jurisdiction is found in the All Writs Act, 28 USC § 1651(a); or (3) whether it lies under some other equitable concept. *See United States Navy–Marine Corps Court of Military Review v. Carlucci,* 26 MJ 328 (CMA 1988). The primary question is whether the appeal is from a *final judgment* below or whether it is an *interim appeal.*

■ If it is a final appeal, jurisdiction *vis-a-vis* the appeal lies with the appropriate appellate body. Article 66 makes it quite clear that a Court of Military Review obtains jurisdiction to review a case by referral of a Judge Advocate General. Art. 66(b). However, what constitutes a *final judgment* of a Court of Military Review has never been completely resolved.

One reason that controversy has surrounded the question of whether a judgment of a Court of Military Review is appealable is because the Uniform Code of Military Justice does not define finality. Article 67 (1989) provides three avenues of appeal from decisions of a Court of Military Review:

(a) The Court of Military Appeals shall review the record in—

(1) all cases in which the sentence, as affirmed by a Court of Military Review, extends to death;

(2) all cases reviewed by a Court of Military Review which the Judge Advocate General orders sent to the Court of Military Appeals for review; and

(3) all cases reviewed by a Court of Military Review in which, upon petition of the accused and on good cause shown, the Court of Military Appeals has granted a review.

■ The statute is ambiguous. The triggering mechanism permitting an appeal to the United States Court of Military Appeals is the fact that a case has been "reviewed." In an attempt to give meaning to this word, we held in *United States v. Best,* 4 USCMA 581, 584, 16 CMR 155, 158 (1954) [*Best* I], that "Congress intended this Court to review a decision by a board of review [now Court of Military Review] only if it has finally acted on both the findings and the sentence." However, we soon modified this narrow view of "finality" as applied to government appeals under then Article 67(b)(2) (Article 67(a)(2) since 1989). *United States v. Papciak,* 7 USCMA 224, 22 CMR 14 (1956).[5]

In *United States v. Best,* 6 USCMA 39, 19 CMR 165 (1955) [*Best* II], we were able to rely upon the lack of finality as defined in *Best* I to conclude that the rehearing of Sergeant Best's court-martial was properly conducted, although his petition for review of the Board of Review decision was pending at this Court at the time. Our rationale was that the first petition was from an

---

3. This case illustrates but one of the many actions which can move the case backwards along the time-line rather than forward. Other examples are government interlocutory appeals under Article 62, UCMJ, 10 USC § 862; petitions for extraordinary relief pursuant to the All Writs Act, 28 USC § 1651(a); mistrials; withdrawn charges; and post-trial evidentiary hearings.

4. Jurisdiction is used here in the generic sense of the word. In a "court-martial" system, the word "authority" may be more clearly descriptive.

5. To the extent that *Best* I can be read as standing for the proposition that the Court of Military Appeals will not hear a case under Article 67(a)(3) unless the findings and sentence have been affirmed, it is expressly overruled.

interlocutory, as opposed to a final, judgment of the Board of Review.

Today, it is well-settled that this Court will entertain a myriad of interlocutory matters, all of which can materially affect the court-martial. We do not limit our review to cases described in *Best* I or *Papciak*. We consider whether a petitioner has shown "good cause" under Art. 67(a)(3). Thus, questions still remain as to what the lower courts may do while an interlocutory appeal is pending and as to what a final appeal is.

▆▆▆ First of all, we reaffirm the definitions of *finality* as used in *Best* and *Papciak*. Within the meaning of Article 67(a)(1) and (3), "final" means the conviction and sentence are both affirmed. Within the meaning of Article 67(a)(2), "final" means that the Judge Advocate General has ordered the case sent to the United States Court of Military Appeals for review. Once a "final" decision is before this Court for consideration, then the lower courts are divested of legal authority to take any action which would have the effect of diminishing the jurisdiction of this Court. *United States v. Bullington*, 13 MJ 184 (CMA 1982); *United States v. Jackson*, 2 USCMA 179, 7 CMR 55 (1953). Although jurisdiction over the servicemember will continue to lie below for some purposes (such as clemency, or remedial actions such as—vacation of suspended sentences; approval of appellate leave; administrative separations or the like), neither the lower court nor the convening authority can take any action to diminish the higher court's jurisdiction. *See United States v. Bullington, supra.*

▆▆▆ Second—interim (interlocutory) appeals, on the other hand, do not divest the lower court or convening authority of the authority to continue the case unless the higher court issues a stay of the proceeding or unless a stay is required by opera-

tion of a Rule for Courts–Martial or by law. *See* RCM 908(b); Art. 62.

Applying these rules to the instant case, we conclude that appellant's petition to this Court in October 1975 was an interim (in-. terlocutory) appeal. The action taken by the Court of Military Review did not result in a *final* decision. Although the action of the Court of Military Review did not in any way diminish this Court's jurisdiction to consider appellant's interim (interlocutory) appeal by way of a petition "on good cause shown," the interim appeal did not automatically stay the rehearing or divest that court-martial from carrying out the mandate of the Court of Military Review.

Appellants (or petitioners) are always free to ask the lower court or to petition the appellate court for a stay of the proceeding below, and of course the Government can refrain from continuing the prosecution pending resolution of the interim appeal.

▆▆▆ Thus, we reject appellant's argument that filing a petition for review of an interim decision "completely divests" the court-martial of jurisdiction. The lesson of *Bullington* and like cases is that the final action in the case will in every instance be reviewable. Once the Court of Military Review has jurisdiction over a case, no action by a lower court or convening authority will diminish it. *Boudreaux v. United States Navy–Marine Corps Court of Military Review*, 28 MJ 181 (CMA 1989). The same holds true before this Court.[6]

V

▆▆▆ Two additional matters warrant our consideration. First, appellant asks us in the interest of justice to dismiss the charges and specifications on the equitable theory of laches. In other words, he argues that it is unfair that his appeal took over 17 years to finally mature. While his entreaty is not unreasonable, our review of the record of trial and the result compels

6. We have carefully read the Epilogue contained in the decision of the Court of Military Review. 33 MJ at 658–59. The decision we reach today should answer the concerns expressed therein.

The business of military justice can proceed in an orderly manner. Any party who can demonstrate a potential injury has a remedy. It is titled a Motion for Stay of Proceedings.

us to reject it. In the final analysis, he stands convicted and sentenced for misconduct to which he entered pleas of guilty. We can find no prejudice resulting from the delay in his case.

Secondly, we note that the United States Navy–Marine Corps Court of Military Review consolidated some of the charges and specifications. That court then determined that reassessment of the sentence was not necessary because "the military judge instructed the members that these offenses were multiplicious for sentencing." 33 MJ at 658. We agree that no further relief is necessary.

After many years, we are satisfied that the conviction and sentence of appellant are justified by the facts and the law.

The July 10, 1991, decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges CRAWFORD and GIERKE concur.

SULLIVAN, Chief Judge (concurring in the result):

The law of the case and the operation of the provisions of the Uniform Code of Military Justice provide the answer to the granted issue. It is that the rehearing of December 2, 1975, properly had jurisdiction over appellant's case notwithstanding the pendency of appellant's premature petition for review in our Court on that same day.

On December 2, 1975, appellant's case was before the convening authority for a rehearing pursuant to a valid remand order authorized by the Code and issued by the Court of Military Review. Art. 66(d), UCMJ, 10 USC § 866(d). Appellant's 1975 petition to our Court failed to properly invoke the jurisdiction of our Court, and this is reflected in our decision at that time to dismiss it as "premature" rather than to deny review. *See* Appendix; *United States v. Boudreaux*, 23 USCMA 728 (1975). Through the proper use of stays or other appropriate applications to higher courts, and a subsequent grant of such

motions, appellant could have moved the jurisdiction to another court such as our Court or back to the Court of Military Review. This was not done. *See also United States v. Henderson*, 34 MJ 174, 175 n. 2 (CMA 1992). Therefore, the rehearing on December 2, 1975, had lawful jurisdiction.

At oral argument in this case and in other cases over the years, I have described a "tunnel of power" theory to illustrate how the UCMJ was wisely constructed by Congress to give jurisdiction to various authorities during a case's progress through the judicial system. If one with a visual sense looks at how Congress intricately constructed the UCMJ to empower various authorities to exercise jurisdiction or power during the judicial process, you can almost see a tunnel (the trial and appellate process) and a train (an accused's case). As the train enters the beginning of the tunnel, the military judge controls the train (appellant's case) as the train moves through this section at the beginning of the tunnel. In this court-martial section, the military judge, not any other authority, has control or power or jurisdiction over the train (the case). At a certain point the UCMJ provisions allow the train (the case) to move to the next section of the tunnel (the section controlled by the convening authority). In this section, only the convening authority has jurisdiction or power over the case.

The case then moves to the other sections of the tunnel controlled by the Court of Military Review or the United States Court of Military Appeals or (since 1984) to the Supreme Court pursuant to the relevant provisions of the UCMJ. When the train (the case) is in a certain portion of the tunnel, the relevant UCMJ provisions describe which authority has control or power or jurisdiction over the case at that time. There are provisions of law where an appellant can get off the train and go to another higher section of the tunnel and request that the train be moved to another section of the tunnel. For example, a petition under the All Writs Act (28 USC § 1651(a)) can, if successful, allow our Court to move

the train right on up to our section of the tunnel.

In the instant case, on December 2, 1975, appellant's train was parked in the convening authority's portion of the tunnel because it had been properly sent back by the Court of Military Review under its codal power. A proper request for a stay or a petition under the All Writs Act accompanied by a responsive judicial act could have moved the train to another section of the tunnel. That, however, was not done, so on December 2, 1975, the convening authority had the jurisdiction under the Code to conduct the rehearing.*

Under the law of the case and under the plain provisions of the UCMJ, I join the decision to affirm.

---

* The plea to move appellant's train to our Court's section of the tunnel was properly dismissed as premature and his train remained parked down the tunnel.

WISS, Judge (concurring in the result):

In *United States v. Papciak*, 7 USCMA 224, 22 CMR 14 (1956), this Court more precisely explained its opinion in *United States v. Best*, 4 USCMA 581, 16 CMR 155 (1954). The *Papciak* opinion indicates that a decision of a Board of Review (now Court of Military Review), is "final" if that decision either finally resolves a right of one of the parties or if it resolves such a right in a way as to leave no adequate remedy for the party except appeal. Thus, in that case, the Court found jurisdiction to answer a certified question referred by the Judge Advocate General under then Article 67(b)(2) (Article 67(a)(2) since 1989), concerning the correctness of the Board of Review's decision to order a new staff judge advocate's review [now recommendation] and action by a different convening authority.

Under *Papciak*, then, it is the nature of the Court of Military Review's resolution of a party's right which will decide whether the decision is "final," not the mere fact that the Judge Advocate General has sent the case to this Court under Article 67(a)(2).

The August 1975 decision of the Court of Military Review in this case was not a final decision within the ambit of this standard— at least, not from appellant's viewpoint and at least not as it related to a rehearing. Accordingly, while appellant styled his petition to this Court in October 1975 as a petition for grant of review challenging that rehearing, I agree with the majority that it actually was in the nature of an interim, interlocutory appeal. The majority correctly concludes that, without an order from this Court, that interlocutory appeal did not, itself, act to stay the rehearing or to divest the court-martial from conducting the rehearing as the Court of Military Review had ordered.