Michael HOLLYWOOD, 088 50 0079,
Fireman Apprentice, U.S.
Coast Guard

v.

Vadm Paul A. YOST, U.S. Coast
Guard, Commander, Third Coast
Guard District

and

Captain William M. Devlin, Commanding
Officer, U.S. Coast Guard, Pay and Per-
sonnel Center, Topeka, Kansas.

Misc. Docket No. 3–85.

U.S. Coast Guard Court of
Military Review.

11 June 1985.

Appellate Defense Counsel: LT Keith M. Harrison, USCGR.

Appellate Government Counsel: LT M.J. Zmaczynski, USCGR.

Opinion of the Court On Petition For Extraordinary Relief in the Nature of a Writ of Mandamus.

BAUM, Chief Judge:

Petitioner has requested this Court to exercise its power to grant extraordinary relief in the nature of a Writ of Mandamus or such other relief as may be appropriate to prevent the Commander, Third Coast Guard District, and the Commanding Officer, U.S. Coast Guard Pay and Personnel Center, and their successors, from depriving Fireman Apprentice Hollywood of any rights, privileges or property previously denied as a result of his special court-martial and restore the same to him if already denied. This petition stems from an agreement signed by petitioner and the Commander, Third Coast Guard District relating to waiver of accrued pay and allowances in exchange for an administrative discharge, which, the accused asserts, is void insofar as it deprives him of any rights, privileges or property, because he was denied his right to counsel when entering the agreement.

Petitioner, pursuant to his guilty pleas, was convicted by Special Court-Martial in June 1982 of four offenses of unauthorized absence. His sentence to a bad conduct discharge, confinement at hard labor for two months, forfeiture of $250 per month for two months and reduction to pay grade E–1 was approved by the convening authority and the officer exercising general court-martial jurisdiction. On 9 April 1984, this Court found error affecting the sentence and, after affirming the findings of guilty, set the sentence aside and authorized a rehearing on that aspect alone. The record was returned to the general court-martial authority who, by Supplemental Court-Martial Order dated 8 May 1984, ordered a rehearing on the sentence. As indicated in pleadings and argument before this Court, no appointing order designating a trial defense counsel for petitioner at a sentence rehearing was ever signed nor was petitioner's record ever referred to a court for such a sentence rehearing. Instead, the case apparently languished for a number of months pending a decision whether to recall petitioner from leave. The accused had been placed in a leave status pending review of his conviction, purportedly under *10 U.S.C. § 876a,* (Article 76a, UCMJ), which became effective in January 1982 and reads as follows:

§ 876a. Art. 76a. Leave required to be taken pending review of certain court-martial convictions.

Under regulations prescribed by the Secretary concerned, an accused who has been sentenced by a court-martial may be required to take leave pending completion of action under this subchapter if the sentence, as approved under section 864 or 865 of this title (article 64 or 65) by the officer exercising general court-martial jurisdiction, includes an unsuspended dismissal or an unsuspended dis-

honorable or bad-conduct discharge. The accused may be required to begin such leave on the date on which the sentence is approved by the officer exercising general court-martial jurisdiction or at any time after such date, and such leave may be continued until the date on which action under this subchapter is completed or may be terminated at any earlier time.

*10 U.S.C. § 706*, which became effective on the same date as Art. 76a, provides that the leave taken under Art. 76a will be charged against any accrued leave, with leave not covered by accrued leave to be charged as excess leave, that is, leave without pay.[1]

If a court-martial sentence is disapproved after an accused has been required to take leave under Art. 76a, UCMJ, the accused becomes entitled to pay and allowances for the period of the excess leave that he has been required to take. *10 U.S.C. § 707* relates to payment for that leave as follows:

§ 707. Payment upon disapproval of certain court-martial sentences for excess leave required to be taken

(a) A member—

(1) who is required to take leave under section 876a of this title, any period of which is charged as excess leave under section 706(a) of this title; and

(2) whose sentence by court-martial to a dismissal or a dishonorable or bad conduct discharge is set aside or disapproved by a Court of Military Review under section 866 of this title or by the United States Court of Military Appeals under section 867 of this title, shall be paid, as provided in subsection (b), for the period of leave charged as excess leave, unless a rehearing or new trial is ordered and a dismissal or a dishonorable or bad-conduct discharge is included in the result of the rehearing or new trial

and such dismissal or discharge is later executed.

The portions of subsection (b) of particular relevance to the facts of this case provide for offsetting the amount to be paid an accused by the total amount of his income during the period of excess leave, in language as follows:

(b)(1) A member entitled to be paid under this section shall be deemed, for purposes of this section, to have accrued pay and allowances for each day of leave required to be taken under section 876a of this title that is charged as excess leave....

(2) Such a member shall be paid the amount of pay and allowances that he is deemed to have accrued, reduced by the total amount of his income from wages, salaries, tips, other personal service income, unemployment compensation, and public assistance benefits from any Government agency during the period he is deemed to have accrued pay and allowances. Except as provided in paragraph (3), such payment shall be made as follows:

\* \* \* \* \* \*

(B) Payment shall be made within 180 days from the date of the order setting aside or disapproving the sentence by court-martial to a dismissal or a dishonorable or bad-conduct discharge if a rehearing or new trial has been ordered but charges have not been referred to a rehearing or new trial within 120 days from the date of that order.

\* \* \* \* \* \*

(3) If a member is entitled to be paid under this section but fails to provide sufficient information in a timely manner regarding his income when such information is requested under regulations prescribed under subsection (c), the periods of time prescribed in para-

---

1. It appears that petitioner was placed in a "home awaiting disciplinary action status", over two months before the officer exercising general court-martial jurisdiction approved the sentence. Whether this resulted in petitioner's be-

ing properly placed in an excess leave status under *10 U.S.C. §§ 706 and 876a* is a matter that need not be addressed in our resolution of the issues before this Court.

graph (2) shall be extended until 30 days after the date on which the member provides the information requested.[2]

According to the government's brief, the delay in convening the rehearing was occasioned because the convening authority intended to determine if a rehearing would be fiscally responsible. In this regard, earned income information was requested. On 10 July 1984, petitioner's stepfather telephoned the Third Coast Guard District Legal Office to see if there was an alternative to petitioner's returning to active duty and was told that a decision on the rehearing would not be made until requested wage information was provided. That information was submitted in two letters dated 11 and 30 July 1984. The government asserts that while the financial "work-up" from this information was being completed, petitioner's stepfather called again and informed the legal office that petitioner would waive any money due him in return for an administrative discharge. Subsequent to this call, an agreement to this effect was drafted in the district legal office and sent to petitioner's stepfather who forwarded it to petitioner. On 19 February 1985, petitioner signed the agreement. The General Court-Martial authority, Vice Admiral Yost, signed the agreement on 13 March 1985 and incorporated it into a supplemental court-martial order of even date. By that order, a rehearing was no longer authorized and all rights, privileges and property of the accused were ordered restored except as modified by the agreement which waived all rights to accrued pay and allowances under *10 U.S.C. § 707* in exchange for an administrative discharge.[3]

Petitioner's account of the facts is essentially in accord with the above, except for the role of counsel. Appellate defense counsel states that during the time after this Court issued a decision in the case, he contacted the Third Coast Guard District Legal Office to inquire whether and when a court-martial would be convened to hear evidence in petitioner's resentencing and was advised that the Commander, Third Coast Guard District, was considering withdrawing his sentence rehearing order if the accused would enter an agreement forfeiting any pay and allowances to which he might be entitled. Counsel conveyed this information to petitioner who indicated that he was interested in such an arrangement but would like the assistance of counsel before entering into any agreement. Appellate defense counsel says that this response was relayed to the district legal office and he was told that a copy of any proposed pre-trial agreement would be forwarded to appellate defense counsel if local counsel was not appointed. Appellate defense counsel states that a local counsel was never appointed; that appellate defense counsel never received nor was informed of the contents of any proposed agreement; that petitioner never waived his right to counsel in this matter; and that when petitioner signed the agreement on 19 February 1985 it was his understanding and belief that the agreement had been reviewed and approved by appellate defense counsel, when, in fact, it was not.[4]

Based on these facts, appellate defense counsel, who represented the accused before this Court when the case was reviewed and acted upon in 1984, petitioned the Court on 9 April 1985 for extraordinary relief from the action of the general court-martial authority. On 10 April 1985, this Court ordered that counsel be appointed to represent the parties and that respondents show cause why the relief requested by petitioner should not be granted. Briefs were filed and oral argument was heard

**2.** Although not raised as an issue with respect to the instant petition and not critical to the resolution of issues raised, it appears that the statutory time frame may not have been met in this case.

**3.** The supplemental court-martial order and the agreement are attached as an appendix.

**4.** The government acknowledges that no local counsel was appointed and that a copy of the agreement was not sent to appellate defense counsel as promised.

wherein respondents contend that this Court has no jurisdiction to entertain such a petition; that the agreement in question is not a pretrial agreement, but is, instead, an agreement for an administrative discharge, outside the review authority of this Court; and that petitioner's rights to counsel under the Sixth Amendment of the Constitution and the Uniform Code of Military Justice were not denied. The Court is now prepared to address the issues that have been joined.

■ Respondents argue that there are two bases for jurisdiction to issue extraordinary writs under the All Writs Act, 28 U.S.C. § 1651(a) that have been recognized by the U.S. Court of Military Appeals: (1) in aid of the court's actual or potential jurisdiction, *Gale v. United States,* 17 U.S. C.M.A. 40, 37 C.M.R. 304 (1967) and (2) under the court's supervising authority over inferior courts, *McPhail v. United States,* 1 M.J. 457 (C.M.A.1976). They assert that neither of these grounds apply to the instant petition since, (1) the sentence has been set aside and no rehearing authorized by the general court-martial authority, leaving this Court without a requisite sentence for review under Article 66(b), UCMJ, 10 U.S.C. § 866(b) and (2) that this is not a case which demands the Court to exercise supervisory authority over inferior courts since no judgment of an inferior court burdens petitioner.

To the contrary, while no sentence judgment of an inferior court presently burdens petitioner, there is the potential for that imposition. Should this Court decide that the supplemental court-martial order of 13 March 1985 is void as a result of a tainted agreement, and thereby revitalize the 8 May 1984 order for a sentence rehearing, the potential for a sentence which includes a bad conduct discharge is revived. The issuance of an appropriate writ, when viewed in this light, would certainly be in aid of our potential jurisdiction. See *Bernard v. Commander, Naval Surface Forces, Atlantic,* 9 M.J. 820 (N.C.M.R. 1980) with cases cited therein, and *U.S. v.*

*Bernard,* 11 M.J. 771 (N.M.C.M.R.1981), wherein the noted action of the U.S. Court of Military Appeals could be read as reflecting a new jurisdictional viewpoint contrary to that expressed in the earlier case of *Robison v. Abbott,* 23 U.S.C.M.A. 219, 49 C.M.R. 8 (1974). Furthermore, under the doctrine expressed by the Army Court of Military Review, in *U.S. v. Bullington,* 12 M.J. 570, 571 (A.C.M.R.1981) and reaffirmed by the U.S. Court of Military Appeals in *U.S. v. Bullington,* 13 M.J. 184, 186 (C.M.A.1982), "an appellate court has authority to insure that its orders and decisions are carried out properly." In the instant case, this Court reviewed the record pursuant to Article 66, UCMJ and issued a decision authorizing certain actions at a lower level. The propriety of the actions taken at that level has now been called into question. Clearly, per *Bullington,* this Court has authority to determine whether its earlier decision has been carried out properly. We find, without question, that there is jurisdiction to entertain the instant petition and authority to issue an appropriate writ.

■ Respondents also argue that the document challenged by petitioner is an agreement for an administrative discharge and nothing more. As such, they assert that this Court is without power to review it, citing *Herrod v. Widdecke,* 19 U.S.C. M.A. 574, 42 C.M.R. (1970); *In re Taylor,* 12 U.S.C.M.A. 4373, 31 C.M.R. 13 (1961); *U.S. v. Plummer,* 12 U.S.C.M.A. 18, 30 C.M.R. 18 (1960) *U.S. v. Armes,* 42 C.M.R. 438 (1970); and *Mueller v. Brown,* 18 U.S. C.M.A. 534, 40 C.M.R. 246 (1969). Moreover, in further support of this argument that the agreement is administrative in nature, respondents contend that petitioner has erroneously called it a pre-trial agreement. From respondent's viewpoint, it is nothing of the sort, since the content and procedures effecting it fail to comport with the requirements of the Rules for Courts-Martial (RCM) in the *Manual for Courts-*

*Martial, 1984.* (MCM)[5] In counsel's words, "A pretrial agreement is defined by strict and specified parameters which this does not meet. Therefore, it falls, as intended, under the category of an administrative discharge agreement, because an administrative remedy is sought by petitioner in lieu of asserting an administrative right to pay and allowances." As such, according to counsel, it is not reviewable at this level because "this Court may only review judicial matters."

We need not address the question whether counsel's statement correctly describes the limits of our review authority, for his basic argument, that the agreement relates only to administrative matters, overlooks the fact that the instant agreement, whatever it is called and whatever its true nature, has been incorporated by reference into "Special Court-Martial Supplemental Order No. 1–85" of March 13, 1985, which purports to be the final *judicial* action in this case. Accordingly, utilizing the review criterion propounded by counsel, the instant agreement is reviewable by this Court as an integral part of the last court-martial order issued in this case.

Respondents make much of the fact that this agreement does not conform in all respects to the description and procedure

for "pretrial agreements" in R.C.M. 705, MCM, 1984, attaching particular importance to the fact that the instant agreement does not contain an offer to plead guilty or enter a confessional stipulation, such matters having been resolved at the earlier trial. Clearly, this agreement is not a plea bargain, but, in our view, R.C.M. 705, while prominently noting the "promise by the accused to plead guilty" under "Nature of Agreement", has not limited permissible agreements to plea bargains and certainly the case law on this subject has not so limited the agreements that are permitted.[6] Whether it is called a "pretrial agreement", a "plea bargain", a "sentence bargain" or some other term is of no moment, because it has been recognized that an agreement between an accused and a convening authority prior to a rehearing on the sentence is reviewable at the appellate level, without regard to what it is called, and upon such review, may be found to be valid and enforceable, with compliance ensured by means of a petition for extraordinary relief, if necessary. *U.S. v. Mills*, 12 M.J. 1 (C.M.A.1981).

 The most important matters with respect to this agreement that we must consider are not its name or its failure to include within its terms an offer to plead

---

**5.** Executive Order 12473 which sets an effective date of August 1, 1984 for MCM, 1984 also states:

\* \* \* \* \* \*

[T]hat nothing contained in this Manual shall be construed to invalidate any restraint, investigation, referral of charges, designation or detail of a military judge or counsel, trial in which arraignment had been had, or other action begun prior to that date, and any such restraint, investigation, trial, or other action may be completed in accordance with applicable laws, Executive orders, and regulations in the same manner and with the same effect as if this Manual had not been prescribed.

\* \* \* \* \* \*

Since this case was initially tried, reviewed, and ordered to a sentence rehearing before the effective date of MCM, 1984, it is questionable whether the new MCM applies, particularly since negotiations and drafting of an agreement had apparently commenced before the Manual's effective date. In any event, our ultimate conclusions in this case would be the same whether under the old or new Manual.

**6.** The latest Court of Military Appeals opinion to deal approvingly with an agreement that does not relate to pleas of guilty in return for promised action by the convening authority is *U.S. v. Koopman,* 20 M.J. 106 (C.M.A.1985). That case involved a promise by the accused to apply the accrued-leave pay due him at the time of discharge to an indebtedness owed to the Navy Exchange for bad checks in return for a promise by the convening authority to withdraw charges from a special court-martial, treat them at a lower level, and promptly discharge the accused. See also *U.S. v. Mills,* infra. In Appendix 21 of MCM, 1984, *U.S. v. Mills* is cited several times in the analysis of certain portions of R.C.M. 705. These citations, along with the permissive rather than mandatory language of 705(b) setting forth what a pretrial agreement *may* include, tend to indicate that pretrial agreements under the new Manual rule are not limited to plea bargains, particularly since that term is never used in Rule 705.

guilty or make a confessional stipulation but rather the process by which it was entered and the nature of its conditions. We find that this agreement, which relates in general to sentencing rather than pleas of guilty, is the kind of agreement permitted by both the Manual for Courts-Martial and case law. Furthermore, we find no conditions of a prohibited nature. We believe the novel offer by the accused to waive "any and all rights to all accrued pay and allowances due him pursuant to 10 U.S.C. § 707 in exchange for an immediate administrative discharge in lieu of a sentence rehearing" is not prohibited by either regulation or judicial decision, *if the agreement was entered into freely, knowingly, intelligently and voluntarily.*[7] This leads us to the last question presented by the instant petition. Can this Court be assured that these requirements have been met in light of petitioner's assertions concerning deprivation of counsel?

R.C.M. 705 and pertinent court opinions recognize the important role of counsel with respect to pretrial agreements.[8] In fact, R.C.M. 705(d)(2) sets forth the requirement that, "All negotiations shall be with defense counsel unless the accused is not represented." Whether it can ever be said that an accused has made an agreement "freely, knowingly, intelligently and voluntarily", when that agreement is executed without benefit of representation or advice of counsel will, of course, have to be decided on the basis of the facts presented in each particular case. In this case, the facts just will not support the requisite findings in this regard, particularly since we believe that the Govern-

ment improperly denied petitioner his right to be represented by counsel during the negotiations for this agreement.

■ Respondents argue that petitioner was not entitled to a counsel after his case was returned to the convening authority, despite the ordering of a rehearing on the sentence, because no rehearing was ever convened. Moreover, they assert that the original detailed trial defense counsel was no longer available to petitioner because he had been transferred. With respect to this latter contention, we note that petitioner is not basing error on failure to make his earlier trial defense counsel available, only the failure to provide any counsel. But see, *U.S. v. Palenius*, 2 M.J. 86 (C.M.A. 1977) as to the procedure for relief of counsel, which does not appear to have been followed in this case, and *U.S. v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970), with respect to the effect of routine change of duty orders on an existing attorney-client relationship. Contrary to the assertions of respondents, we believe that, upon the ordering of a sentence rehearing by the convening authority on 8 May 1984, petitioner was thereafter entitled to the appointment of a trial defense counsel to represent him with regard to this proceeding, which, in the words of *U.S. v. Flint*, 1 M.J. 428, 429 (C.M.A.1976), is a "trial *de novo.*" Article 27, UCMJ, 10 U.S.C. § 827; Paragraphs 6, 46 and 48, MCM, 1969 (Rev.); R.C.M. 503(c) and 506, MCM, 1984. Such counsel could and should have assisted the accused in preparing for that rehearing or in taking other appropriate action, such as preparation of an agreement in the nature of the one with which we are presently

---

7. R.C.M. 705(c)(1)(A), MCM, 1984 indicates that "A term or condition in a pretrial agreement shall not be enforced if the accused did not freely and voluntarily agree to it." In a separate but related area, *U.S. v. Bertelson*, 3 M.J. 314, 315 (C.M.A.1977), which was cited with approval in *U.S. v. Mills*, supra, sets forth certain safeguards required for the admission in evidence of "confessional stipulations." We believe those safeguards, that the accused acted "knowingly, intelligently and voluntarily," should apply equally as well when considering

the validity of agreements between an accused and a convening authority.

8. See the analysis of R.C.M. 705 and cases cited in Appendix 21, MCM, 1984. In *U.S. v. Mills*, supra, for example, potential difficulties were, in part, resolved by the Court's satisfying itself that the agreement was proposed and shaped by the accused *and his defense counsel* with the accused being fully informed as to the consequences of any unusual provisions.

confronted, or possibly in making a demand for a more timely rehearing.[9]

 The magnitude of the government's impropriety with respect to the denial of counsel is reflected in appellate defense counsel's frustrated attempts to provide advice and assistance to petitioner. In addition to withholding appointment of counsel to which accused was entitled under the Uniform Code of Military Justice and the Manual for Courts-Martial, the government, by failing to provide a copy of the proposed agreement, as promised, effectively blocked the efforts of LT Keith M. Harrison, USCGR to fill the void, long after his duties as appellate defense counsel before this Court had been accomplished. We recognize that an accused is not entitled to representation by appellate defense counsel at a sentence rehearing itself, *U.S. v. Kelker*, 4 M.J. 323 (C.M.A.1978), but, until assignment of a trial defense counsel to represent the accused for that proceeding, we believe that the principle enunciated in *U.S. v. Palenius*, supra, at 2 M.J. 93, that assures the "uninterrupted representation" of an accused before appellate review commences, logically should apply as well after the review is completed. We find the principle of "uninterrupted representation" applicable with full force to the situation encountered in the instant case. To LT Harrison's great credit, he followed that precept and in the words of *Palenius* continued "to remain attentive to the needs of his client by rendering him such advice and assistance as the exigencies of the particular case might require," including the filing of a petition before this Court. Id at 93. It was only the government's delict that prevented him from rendering full advice to petitioner concerning the proposed agreement. In any event, in light of the assertion that the petitioner signed the agreement in the mistaken belief that counsel had reviewed the agreement, found it acceptable and recommended it for signing by the accused, we cannot say that the accused entered into the agreement "freely, knowingly, intelligently and voluntarily". This result flows directly from the government's withholding of counsel and the necessary advice to which the accused was entitled, thereby rendering the agreement void *ab initio*.

In summary, we hold with respect to the matters raised by the petition for extraordinary relief, that:

(1) we have jurisdiction to entertain the petition and authority to issue the necessary writ because such actions are in aid of our potential jurisdiction and necessary to insure that our previous decision in this case is carried out properly;

(2) the agreement signed by the accused and the convening authority is an agreement pertaining to court-martial sentence, which has been incorporated into the purported final judicial action in this case and, as such, is reviewable by this Court;

(3) the accused was improperly denied the right to the assistance of a defense counsel after a rehearing on the sentence was ordered by the general court-martial authority; and

(4) the accused did not enter into this agreement freely, knowingly, intelligently and voluntarily, and the agreement is, therefore, void.

As a result of our determination that the agreement between FA Hollywood and Vice Admiral Yost is void, we find that the Supplemental Special Court-Martial Order No. 1–85 of March 13, 1985, is also rendered void. Our action in voiding this order revives the Supplemental Order of 8 May 1984 which initially directed a rehearing. Accordingly, the record is returned for appropriate action by the officer exercising general court-martial jurisdiction, to either hold the sentence rehearing, if the facts support the conclusion that such action is not foreclosed by the delay in this case; to take some other action which will

---

9. In this regard, it was asserted by appellate defense counsel during oral argument that the actual convening of a rehearing was precluded at the time petitioner signed the instant agreement because of a denial of the right to speedy trial, and that, therefore, the petitioner waived his right to pay in return for something to which he was already entitled. Litigation and resolution of this question, if necessary, properly should be made by those at the trial level.

result in no court-martial sentence, based possibly on a new agreement initiated by the accused and his counsel; or to simply issue an order promulgating the affirmed findings, with no sentence imposed, based on a determination that a sentencing rehearing is impracticable. Finally, it is hereby ordered that the general court-martial authority expeditiously appoint a defense counsel to represent the accused upon return of this case. All rights, privileges and property of which the accused has been deprived by virtue of the sentence previously set aside and by virtue of the supplemental order No. 1–85 of March 13, 1985, which we hold to be void, will be restored pending further action in this case.

Judges, HOLLAND, BRIDGMAN, BURGESS and REINING, concur.

APPENDIX 1

U.S. Department of Transportation

United States Coast Guard

Commander(dl)

Third Coast Guard District

Governors Island

New York, NY 10004

(212) 668-7140

5813

MJ 3001–85

MAR 13 1985

SPECIAL COURT–MARTIAL
SUPPLEMENTAL ORDER NO. 1–85

The Supplemental Special Court-Martial Order dated 8 May 1984 in the case of Fireman Apprentice Michael Hollywood 088 50 0079, U.S. Coast Guard, U.S. Coast Guard ANT RED OAK, Gloucester City, New Jersey is modified as follows: The findings of guilty as promulgated by Special Court-Martial Order, USCGC RED OAK (WLM 689) Gloucester City, New Jersey, dated 4 November 1982, are affirmed. The sentence is set aside. A rehearing is not authorized. All rights, privileges and property of which the accused has been deprived by virtue of the sentence so set aside will be restored except as modified by this attached Agreement signed by the accused on 19 February 1985.

/s/ P.A. Yost

AGREEMENT

THIS document constitutes a binding agreement between Fireman Apprentice Michael Hollywood 088 50 0079, USCG, who is currently on involuntary appellate leave pursuant to Article 76a, Uniform Code of Military Justice and Commander,' Third Coast Guard District, Governors Island, New York 10004. By his signature FA Hollywood affirms that this agreement was initiated at his request, not the U.S. Coast Guard, and that the agreement represents in full his wishes and desires as to case resolution.

This Agreement is premised upon the following facts which neither party disputes:

1. That FA Michael Hollywood enlisted in the U.S. Coast Guard on 7 May 1979.

2. That on 29–30 June 1982, FA Hollywood was tried by Special Court-Martial at U.S. Coast Guard Base Gloucester City, New Jersey on the following specifications:

(a) Unauthorized absence from U.S. Coast Guard ANT RED OAK from at or about 0745, 4 January 1982 to at about 0650, 7 January 1982.

(b) Unauthorized absence from U.S. Coast Guard ANT RED OAK from at or about 0745, 19 January 1982 to at or about 1528, 16 January 1982.

(c) Unauthorized absence from U.S. Coast Guard ANT RED OAK from at or about 0745, 19 January 1982 to at or about 0645, 19 February 1982.

(d) Unauthorized absence from U.S. Coast Guard ANT RED OAK from at or about 0745, 22 February 1982 to at or about 0745, 22 February 1982 to at or about 1020, 14 May 1982.

3. That pursuant to his pleas, he was found guilty of all four specifications.

4. That based on the guilty finding, FA Hollywood was sentenced to be reduced to pay grade E–1, to forfeit $250.00 pay per month for two months, to be confined at hard labor for two months, and to be discharged from the U.S. Coast Guard with a Bad Conduct Discharge.

5. That the Convening Authority approved the sentence in full on 4 November 1982.

6. That the Officer Exercising General Court-Martial Jurisdiction approved the sentence in full on 8 December 1982.

7. That on 18 September 1982, FA Hollywood was placed in a home awaiting disciplinary action status.

8. That on 9 April 1984, the U.S. Coast Guard Court of Military Review affirmed FA Hollywood's conviction for the four aforementioned offenses but set aside the punishment because of error in admitting evidence of a previous Summary Court-Martial conviction.

9. That on 8 May 1984, a Supplemental Court-Martial Order was published setting aside the punishment but ordering a rehearing on sentence.

10. That FA Michael Hollywood does not desire to have a sentence rehearing but does desire to be administratively discharged from the U.S. Coast Guard as soon as possible.

Based on these facts, it is hereby agreed between FA Michael Hollywood and Commander, Third Coast Guard District that FA Hollywood waives any and all rights to all accrued pay and allowances due him pursuant to 10 USC 707 in exchange for an immediate administrative discharge in lieu of a sentence rehearing.

WITNESS

/s/ Michael Hollywood
FA Michael Hollywood
/s/ Paul A. Yost
Commander, Third Coast Guard District

ON THIS 19th DAY OF FEBRUARY 1985, BEFORE ME PERSONALLY CAME MICHAEL HOLLYWOOD TO ME KNOWN TO BE THE INDIVIDUAL DESCRIBED IN AND WHO EXECUTED THE FOREGOING INSTRUMENT .

/s/ Elizabeth Ann Reich