UNITED STATES

v.

James T. BECKERMANN, Chief
Warrant Officer (W–4), U.S.
Coast Guard.

CGCM 0036.
Docket No. 954.

U.S. Coast Guard Court of
Military Review.

Sept. 30, 1992.

Trial Counsel: CDR Arthur R. Butler, USCG.

Assistant Trial Counsel: LT Arne O. Denny, USCG.

Detailed Defense Counsel: LT David J. Martin, USCGR.

Assistant Detailed Defense Counsel: LCDR Gerald R. Wheatley, USCG.

Appellate Defense Counsel: LCDR G Arthur Robbins, USCG (On Brief and Orally Argued).

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR Michael J. Devine, USCG (On Brief and Orally Argued).

Appellate Government Counsel: LCDR Charles J. Bennardini, USCG.

Before Panel Two, BAUM, GRACE and BASTEK, Appellate Military Judges.

BAUM, Chief Judge:

This case is a retrial of Chief Warrant Officer James T. Beckermann on charges for which he was originally convicted and sentenced in 1986. The findings and sentence in that first trial were set aside by this Court in 1988 and an "other trial"[1] authorized as a result of jurisdictional error with respect to appointment of the military judge. *U.S. v. Beckermann*, 25 M.J. 870 (C.G.C.M.R.1988), *aff'd*, 27 M.J. 334 (C.M.A.1989).

After this Court's decision was affirmed by the U.S. Court of Military Appeals in January 1989, the record was forwarded to Commander, Maintenance and Logistics Command, Atlantic by letter of 16 February 1989 from the Commandant of the Coast Guard designating Commander, Maintenance and Logistics Command, Atlantic as substitute convening authority. That officer convened the instant general court-martial on 24 April 1989 and referred the charges to trial on that date. The trial commenced on 14 August and was completed on 17 August 1989. The accused, who retired from the Coast Guard after his first conviction, was retried in that capacity without being ordered to active duty. He was found guilty again of various offenses[2] and was sentenced by the judge to be reprimanded and to be fined $15,000.00.

That sentence was approved and ordered executed on 24 April 1990 by the convening authority.

The record was then forwarded for review to this Court on 4 June 1990 by the Chief Counsel of the Coast Guard pursuant to the decisions in *Boudreaux v. Navy–Marine Corps Court of Military Review,* 28 M.J. 181 (C.M.A.1989); *U.S. v. Wilson,* 20 M.J. 335 (C.M.A.1985); and *U.S. v. Bullington,* 13 M.J. 184, 186 (C.M.A.1982). Appellant initially assigned four errors and oral argument was granted on two of those assignments. Shortly after oral argument was heard, seven supplemental assignments of error were filed and most recently an additional three assignments have been submitted for a total of fourteen assigned errors now before the Court.[3]

The 14 Assignments of Error before this Court are:

I

NO CHARGES EXISTED UPON WHICH APPELLANT COULD BE PROPERLY TRIED BECAUSE THE ARTICLE 32, UCMJ, INVESTIGATING OFFICER WAS DISQUALIFIED FROM ACTING LATER AS THE ACCUSER IN THE SAME CASE

II

APPELLANT HAS BEEN TWICE DENIED HIS RIGHT TO A SPEEDY TRIAL

III

THE MILITARY JUDGE ABUSED HIS DISCRETION BY IMPROPERLY DENYING APPELLANT TWO WITNESSES NECESSARY TO AN ADEQUATE DEFENSE

1. R.C.M. 810(e).

2. Contrary to his pleas, the accused was found guilty of the following offenses: one specification of larceny, one specification of a false claim against the government, and six specifications of conduct unbecoming an officer and a gentleman in violation of Articles 121, 132 and 133 of the UCMJ, 10 U.S.C. §§ 921, 932, 933.

3. Motions for leave to file supplemental assignments of error not previously granted are hereby granted.

## IV

APPELLANT'S OPPORTUNITY FOR A MEANINGFUL REHEARING HAS TWICE BEEN PREJUDICED BY EXCESSIVE DELAY BETWEEN SENTENCING AND THE ACTION OF THE CONVENING AUTHORITY

## V

APPELLANT WAS DENIED EFFECTIVE POST–TRIAL ASSISTANCE OF COUNSEL

## VI

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

## VII

APPELLANT WAS TRIED BASED UPON DEFECTIVE ARTICLE 34, UCMJ ADVICE

## VIII

APPELLANT'S COURT–MARTIAL ACTED WITHOUT JURISDICTION BECAUSE IT WAS CONVENED BY A DISQUALIFIED CONVENING AUTHORITY

## IX

APPELLANT'S SENTENCE WAS DISPROPORTIONATE DUE TO THE MILITARY JUDGE'S RELIANCE UPON INACCURATE PERSONAL DATA WHEN SENTENCING APPELLANT

## X

APPELLANT WAS TRIED UPON DEFECTIVE CHARGES BECAUSE THE CHARGE SHEET WAS INCOMPLETE

## XI

THE STAFF JUDGE ADVOCATE R.C.M. 1106 RECOMMENDATIONS TO THE CONVENING AUTHORITY WERE DEFECTIVE

## XII

APPELLANT'S CONVICTION MUST BE SET ASIDE BECAUSE DUE PROCESS REQUIRES THAT A JUDGE IN A CRIMINAL CASE HAVE A FIXED TERM OF OFFICE. *BUT SEE UNITED STATES V. GRAF,* 32 M.J. 809 (N.M.C.M.R.1990), *PETITION GRANTED,* 33 M.J. 189 (C.M.A.1991) (MEM.)

## XIII

APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION

## XIV

THE COURT OF MILITARY REVIEW IS WITHOUT POWER TO AFFIRM THE FINDINGS OF GUILTY AND SENTENCE BECAUSE THE APPELLATE MILITARY JUDGES ARE ASSIGNED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION

The last three assignments relating to lack of fixed terms of office for military judges and asserted non-compliance with the Appointments Clause of the United States Constitution for both trial and appellate military judges, have been raised in other cases before this Court and have been decided contrary to the Appellant's position here. *U.S. v. Prive,* 35 M.J. 569 (C.G.C.M.R.1992); *U.S. v. Ryder,* 34 M.J. 1259 (C.G.C.M.R.1992); *U.S. v. Dorman,* (C.G.C.M.R. Dkt. No. 986 July 7, 1992); *U.S. v. Lynch,* 35 M.J. 579 (C.G.C.M.R. 1992). Those decisions are dispositive. Assignments of Error XII, XIII, and XIV are, therefore, rejected. Assignments of Error III, IV, VII, VIII, IX, X and XI, after full consideration, are deemed to be without merit and, accordingly, are rejected without explication. In so doing, we specifically find no prejudice to Appellant from any post-trial delays in this case. Assignments of Error I, II, V and VI warrant discussion.

*Assignment of Error I*

NO CHARGES EXISTED UPON WHICH APPELLANT COULD BE PROPERLY TRIED BECAUSE THE ARTICLE 32, UCMJ, INVESTIGATING OFFICER WAS DISQUALIFIED FROM ACTING LATER AS THE ACCUSER IN THE SAME CASE

■ The officer who conducted an investigation of sworn charges pursuant to Article 32, Uniform Code of Military Justice (UCMJ), signed a new set of charges as accuser, after completing that investigation. The second set of sworn charges were the ones referred to trial in 1986 and again in 1989. Appellant asserts that the Article 32 investigating officer is prohibited from preferring charges by the language of Rule for Courts–Martial (R.C.M.) 405(d)(1), Manual for Courts–Martial, United States, 1984, which says that such an officer is "disqualified to act later in the same case in any other capacity." Thus, Appellant argues, since that provision disqualified the investigating officer from her later action of swearing to charges, those charges are a nullity and should be dismissed.

We do not read the language of R.C.M. 405(d)(1) as disqualifying the investigating officer from preferring charges. We believe the quoted portion of R.C.M. 405(d)(1) simply repeats established statutory law prohibiting an investigating officer from acting as military judge, trial counsel, defense counsel, reviewing judge advocate, or appellate military judge in the same case. Articles 26(d), 27(a)(2), 64(a) and 66(h), UCMJ, 10 U.S.C. §§ 826(d), 827(a)(2), 864(a), 866(h). Rather than being prohibited from acting as accuser after investigating allegations, Article 30(a), UCMJ, 10 U.S.C. § 830(a) makes it clear that an investigating officer is an appropriate accuser. That Article says that charges and specifications shall be signed and sworn to by someone who either has personal knowledge of, *or has investigated,* the matters and states that they are true in fact to the best of his knowledge and belief.

As indicated in the Discussion paragraph following R.C.M. 405(a), one of the primary purposes of the Article 32 investigation is to inquire into the truth of the matters set forth in the charges. An earlier Manual for Courts–Martial provision formalized that function by stating that, unless otherwise indicated by the investigating officer, submission of that officer's report, "will be regarded as a statement that to the best of his knowledge and belief ... the matters set forth in the charges as to which he recommends trial are true...." Paragraph 34e, M.C.M.1969 (Rev.). Accordingly, an Article 32 investigating officer, having investigated matters and determined them to be true, falls squarely within the literal language of Article 30(a), UCMJ as a proper person to sign and swear to charges based on that investigative determination.

As stated in *U.S. v. Lane,* 34 C.M.R. 744, 753 (C.G.B.R.1964), "[t]here would appear to be no good reason why an officer appointed to make an impartial investigation of sworn charges should not himself draw up and sign an additional charge disclosed by the information developed during his investigation." If that officer may properly file additional charges, we believe he is free to redraft and swear to all of the charges as accuser. The investigating officer in the instant case was not disqualified by R.C.M. 405(d)(1) from preferring charges.

■ If our determination in this regard were otherwise and the investigating officer was somehow seen to be disqualified from preferring charges, it would not render the charges a nullity, as argued by Appellant. Case law makes it clear that such a matter is not jurisdictional in nature. Failure to object at trial to defects in the preferral of charges constitutes waiver and permits trial on unsworn charges. *U.S. v. May,* 1 U.S.C.M.A. 174, 2 C.M.R. 80 (1952); *U.S. v. Marcy,* 1 U.S.C.M.A. 176, 2 C.M.R. 82 (1952). Assignment of Error I is rejected.

*Assignment of Error II*

APPELLANT HAS BEEN TWICE DENIED HIS RIGHT TO A SPEEDY TRIAL

## A.

### First Trial

Appellant contends that all charges and specifications should have been dismissed for lack of speedy trial, both at his first court-martial and also at his second. When he was first tried, Appellant moved for dismissal of all charges based on the asserted failure of the Government to commence trial proceedings within the 120 days called for by R.C.M. 707. The military judge denied the motion, after excluding from computation a period he characterized as having been requested by the defense, bringing the total elapsed time within the required 120 days. The judge's ruling in this regard was assigned as error before this Court when we reviewed Appellant's first trial. The issue was not addressed upon our declaring the trial a nullity for jurisdictional reasons.

The Government argues that our authorizing another trial constituted affirmation of the judge's ruling denying the speedy trial motion. Otherwise, judicial economy would have called for dismissing the charges entirely if we had deemed the issue to have merit. Thus, the Government, citing *U.S. v. Morris*, 13 M.J. 297, 300 (C.M.A.1982), argues that the trial judge's ruling is now the law of that case and cannot be relitigated by the defense. We are not convinced that *U.S. v. Morris, supra*, stands for the proposition asserted by the Government but, in any event, Appellant's assignment concerning the first trial must be denied because we believe the judge's ruling was correct and that trial commenced within the time allowed by R.C.M. 707.

## B.

### Second Trial

### (1)

### Commencement of 120–Day Speedy Trial Requirement

■ Appellant has also assigned the same error with respect to the second trial.

**4.** Article 1(1), UCMJ, 10 U.S.C. § 801(1).

Citing two Army Court of Military Review opinions, *U.S. v. McFarlin*, 24 M.J. 631 (A.C.M.R.1987) and *U.S. v. Rivera–Berrios*, 24 M.J. 679 (A.C.M.R.1987), Appellant says that speedy trial requirements under R.C.M. 707 apply when an appellant is granted a new trial and that those requirements were violated here. Specifically, Appellant says the judge erred by denying a motion to dismiss the charges for failure to commence proceedings within 120 days after the Court of Military Appeals' decision affirming this Court's action setting aside findings and authorizing another trial.

Appellant acknowledges that the Army Court of Military Review in *U.S. v. McFarlin, supra*, and *U.S. v. Rivera–Berrios, supra*, used the date of notice to the convening authority as the starting point for computing the 120–day time limit for commencing trial, but says that in this case it should have commenced earlier. Rather than beginning with notification to the convening authority, Appellant says the facts before us call for the accountable time to start when the U.S. Court of Military Appeals issued its order returning the record to the Department of Transportation's General Counsel, who is the Coast Guard's Judge Advocate General.[4] If that date is used to start the clock running, the allowable time would have expired in May, before the earliest date the Government was ready to proceed.

At trial, when this issue was raised, the Government successfully argued that the more appropriate date for starting the 120–day clock is the date called for by *U.S. v. McFarlin, supra*, the date the convening authority received notification of his designation as the officer authorized to convene the court by the Commandant of the Coast Guard. Based on that date, 21 February 1989, the 120 days would have expired on 21 June 1989 during a period of defense requested delay. While R.C.M. 707 at the time of this retrial provided no guidance with respect to this issue, the judge's decision to start the computation on 21 Febru-

ary 1989 accords with *U.S. v. McFarlin, supra.*[5]

It makes sense that a convening authority should not be held accountable for delay in moving the proceedings along when he has not received the record of trial and charge sheet or, for that matter, even received notification of designation as the convening authority. Likewise, it is sensible that the Judge Advocate General should have a reasonable time in which to decide whether to seek certiorari from the U.S. Supreme Court pursuant to Article 67(a), UCMJ, 10 U.S.C. § 867(a) or to return the record for another trial. While views may differ on what constitutes a reasonable time for such decisions, it would seem, absent a demand for speedy trial by the accused at the time or evidence of willful delay on the part of the Government, that a reasonable time should encompass the period allowed by rules of the U.S. Supreme Court for petitioning for a writ of certiorari.

The time it took for a decision to retry the accused and designate the convening authority was well within the Supreme Court's allowable time of 90 days from date of decision to filing of the petition for certiorari. It took 38 days from 9 January 1989, the date of the U.S. Court of Military Appeal's decision, to 16 February 1989, the date of the letter from the Commandant of the Coast Guard to the convening authority. Five days later, the convening authority received that letter for a total of 43 days from the date of the U.S. Court of Military Appeals decision. We believe that to be a reasonable period of time, particularly in view of the fact that the Court of Military Appeals did not return the record to the Coast Guard until 14 days after the decision date. Accordingly, we agree with the starting time selected by the military judge in ruling on the defense motion.

(2)

*Delay in Detailing Defense Counsel*

(a)

*Effect on Speedy Trial*

At trial, the speedy trial motion and supporting argument were based solely on the question of a starting date for computation of the 120–day speedy trial clock. The judge's determination in that regard and our agreement with him do not entirely dispose of the speedy trial issue, however, because Appellant has advanced another argument before this Court for finding that commencement of the trial on 14 August 1989 was not within the 120 days allowed by R.C.M. 707. The judge in the second trial excluded certain periods from computation, as did the judge in the first trial, so that the 174 days from notification of the convening authority on 21 February 1989 to commencement of trial on 14 August 1989 was reduced below the accountable time of 120 days.[6] Appellant now argues for the first time that part of the time excluded should be counted against the 120 days.

The basis for this argument is the assertion that the Government failed to detail a trial defense counsel in a timely fashion, resulting in a significant period during which Appellant was denied his right to

---

**5.** It also accords with the latest revision of R.C.M. 707 which became effective subsequent to trial in this case. On 15 November 1991, R.C.M. 707 was modified to, among other things, expressly provide for rehearings. R.C.M. 707(b)(3)(D) now states that with respect to such cases, "a new 120–day time period under this rule shall begin on the date that the responsible convening authority receives the record of trial and the opinion authorizing or directing a rehearing." Presumably, this rule should apply equally to an "other trial" that is ordered after the first one is invalidated for lack of jurisdiction, as occurred here.

**6.** R.C.M. 707(c) calls for exclusion of a variety of time periods when determining whether the 120 days have run, including periods of delay resulting from the judge's unavailability due to extraordinary circumstances and delay resulting from a continuance at the request or with the consent of the defense. Although it is not completely clear exactly how the military judge apportioned all the excludable periods, it appears from his findings that he saw enough delay attributable to his unavailability and to the defense's request, or consent, to bring the 174-day period from 21 February 1989 to 14 August 1989 down to a total of less than 120 days. He said, "[t]aking all those things [excludable periods of delay] into account, I believe that this trial has commenced today within a period less than the 120 days from notification of the convening authority. The defense motion is denied." Record of Trial, Volume 7, at 55.

counsel. Appellant contends that the remedy for such a violation "would be the granting of a continuance, chargeable to the Government, for the number of days of improper delay in detailing trial defense counsel." Appellate Defense Counsel's Assignments of Error and Brief at 14. If that is done, 142 days would be accountable to the Government, according to Appellant, resulting in a violation of the 120–day speedy trial rule.

Appellant arrives at this conclusion in the following fashion. He says that upon referral of charges to a court-martial he was entitled to counsel, but one was not detailed until the week of 22 May 1989, most probably 25 or 26 May. Utilizing 25 May as the date counsel was provided, Appellant argues that there was a 49–day period that he was without counsel. Allowing those days for defense preparation after assignment of counsel, but charging them to the Government, results in a 142–day delay without trial having commenced.

■ The Government does not challenge the fact that counsel was not detailed until the week of 22 May 1989. Accordingly, we will accept 25 May 1989 as the date of counsel assignment for computation purposes. We also agree that Appellant was entitled to a military trial defense counsel upon referral of charges, *Hollywood v. Yost*, 20 M.J. 785 (C.G.C.M.R.1985), but we disagree on the date of referral. Charges were referred to trial on 24 April 1989 rather than 6 April 1989, the date relied upon by appellate defense counsel in asserting a 49–day delay in assignment of counsel. The delay in detailing counsel, therefore, turns out to be 31 days rather than 49.

Even so, if Appellant's argument concerning shifting accountability for that delay from defense to the Government is accepted, the elapsed time at the hands of the Government would still exceed the allowed 120 days. The defense would have had from 25 May 1989 until 25 June 1989 to prepare for trial without being charged for any delay. Thus, the total time charged to the Government would be 124 days instead of 142, still prompting dismissal of charges.

This defense argument on charging the Government with the delay in counsel appointment was not presented to the military judge. Accordingly, no evidence on this matter was developed at trial and no ruling on shifting accountability was made. Furthermore, Appellant has cited no authority to this Court for charging the Government in this manner for defense requested delay. On the face of it, then, without some legal underpinning for such a novel proposition, Appellant's contention must be rejected because the military judge's allocation of accountable periods comports with R.C.M. 707.

■ There simply is no statutory provision or Rule for Courts–Martial that calls for the kind of shifting of responsibility from the defense to the Government that Appellant urges us to make. The closest thing we can find as possible authority for such a change of accountability appears in *dicta* from *U.S. v. Tebsherany*, 32 M.J. 351 (C.M.A.1991).

In that case, the Court of Military Appeals, as here, was confronted with a speedy trial issue and the judge's exclusion of certain defense requested delays from the 120–day computation. The appellant in that case argued that he was forced to request the delays because the government failed to comply in any meaningful way with his requests for discovery. The Court found otherwise, but in so doing, said:

A component of effective representation of an accused at the pretrial stage is preparation for an Article 32 investigation. *United States v. Worden*, 17 USCMA 486, 38 CMR 284 (1968). If the Government interferes with discovery or acts in bad faith to preclude defense counsel's preparation for that proceeding, an accused would be deprived of his right to effective representation. From this, it would follow that time requested by counsel to examine material not disclosed until the pretrial investigation might, under facts showing bad faith, be charged to the United States in accounting for pretrial delay.

*Id.* at 354.

**850**

Applying that rationale to the issue before this Court, if Appellant had contended, and the military judge had so found, that the defense was forced to request a continuance because of delay in assigning counsel, or availability of assigned counsel to prepare for trial, and if such delay resulted from the Government's bad faith, we might have a basis for the action now requested. Without such a foundation having been laid at trial, we are unable to accept at this stage the argument being made that charges should be dismissed.

If this issue had been raised and litigated at trial, there undoubtedly would have been evidence as to when defense counsel was first assigned to the *Beckermann* case, possibly showing a date earlier than 25 May 1989. Also, evidence may have indicated what role caseload played in counsel's assignment and availability for trial preparation. Caseload and determination of priorities in the disposition of cases are invariably aspects to consider, no matter when a counsel is formally detailed. These are things that might bear on the question of good faith which could have been developed at trial and resolved. We will not speculate as to the facts now or allow litigation of this matter for the first time at this level. Appellant's Assignment of Error II is rejected.

### (b)
### *Other Aspects of Delay in Detailing Defense Counsel*

In resolving the speedy trial issue, we do not mean to diminish in any way the importance of timely detailing of military counsel to represent an accused. Counsel must be provided not only during the trial itself but at critical stages before trial. *U.S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *U.S. v. Adams*, 21 U.S.C.M.A. 401, 45 C.M.R. 175 (1972), *U.S. v. Jackson*, 5 M.J. 223 (C.M.A. 1978). Certainly, in military practice, compliance with Article 27, UCMJ requires that, at the latest, a counsel must be detailed when charges are referred to a general or special court-martial for trial. That was not done in the instant case, despite this Court's exhortation in *Hollywood v.*

*Yost, supra,* on the need for detailing a trial defense counsel upon the convening authority's ordering a rehearing.

The problem presented here undoubtedly follows from the change in the method of detailing counsel effected in 1984 by the Military Justice Act of 1983. That Act modified Article 27, UCMJ, to allow each service Secretary to prescribe regulations with respect to detailing counsel. The Coast Guard's implementation of this change in its Military Justice Manual COMDTINST M5810.1C, Section 3–C, calls for detailing of counsel by a staff judge advocate.

Prior to 1984, Article 27 required the convening authority to assign counsel to a court-martial. In conformity, therewith, counsel were listed in the order convening the court, along with the judge and court members. *U.S. v. Singleton*, 21 U.S.C.M.A. 432, 45 C.M.R. 206 (1972). Under that system, when charges were referred to a particular court there would be a named counsel already assigned. Now, the convening authority appoints only the court members and there may be no counsel assigned to a case until after the referral of charges, as occurred here 31 days later. Delays of this nature may violate an accused's right to counsel and may result in prejudicial error.

The right to counsel was not violated in this case, however, because uninterrupted representation of Appellant was available from appellate defense counsel until a trial defense counsel was detailed. As we stated in *Hollywood v. Yost, supra:*

We recognize that an accused is not entitled to representation by appellate defense counsel at a sentence rehearing itself, *U.S. v. Kelker*, 4 M.J. 323 (C.M.A. 1978), but, until assignment of a trial defense counsel to represent the accused for that proceeding, we believe that the principle enunciated in *U.S. v. Palenius, supra,* at 2 M.J. [86] 93, [ (C.M.A.1977) ], that assures the "uninterrupted representation" of an accused before appellate review commences, logically should apply as well after the review is completed. *Id.* at 20 M.J. 792.

Notwithstanding the continuing representation by appellate defense counsel, there was a delay in providing trial defense counsel in this case which was alluded to by the accused himself at trial after counsel rights were explained by the military judge. The following exchange with the judge, which was not pursued, addresses the subject:

Captain Garvin: Do you have any questions about your rights to counsel?

Mr. Beckermann: I only have one question, Your Honor, and that is the times when counsel were appointed, I don't know if they were appointed much later than trial counsel was appointed or not and whether or not that becomes at issue here. I first talked to my counsel on June 12th or June 15th, it was about seven days after the initial trial was scheduled to start and he talked to me initially in late May and told me he was appointed then and I was led to believe that the trial counsel had been appointed much sooner than that. So I just wanted to clarify the time frame when counsel was appointed, Your Honor.

Captain Garvin: Very well, your statement is now contained in the record. Do you have any other questions about your rights to counsel?

Mr. Beckermann: No, Your Honor, I do not.

Record of Trial, Volume 7, at 9–10.

Appellant's comments gave no indication of the speedy trial argument that we have already addressed, nor do they constitute a denial-of-counsel assertion. Did they warrant clarification at the time? Possibly, but we believe them to be insufficient to obligate the judge to make further inquiry. His failure to pursue this matter does not constitute error. In meeting our Article 66, UCMJ responsibilities, however, we will look for possible prejudice resulting from delayed detailing.

If counsel had been forced to go to trial without adequate time to prepare, resulting in ineffective representation, there would be clear-cut prejudice. That did not occur here. Defense requests for continuances were granted, affording more than adequate time to prepare for trial. Moreover, despite Appellant's assertions to the contrary, *infra*, there is no indication that representation at trial was in any way deficient. We discern from this record no prejudice to Appellant resulting from the delay in counsel's assignment. Any error in not detailing counsel earlier was harmless beyond a reasonable doubt. Appellant's right to a fair trial was not impaired.

In order to foreclose such future delays, however, we strongly suggest modification of the Coast Guard's Military Justice Manual to spell out when defense counsel must be detailed and require compliance. At present, Section 3–C, the provision pertaining to detail of defense counsel, does not fulfill that function.

*Assignments of Error V and VI*

## APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND AFTERWARDS

In Assignment of Error V, Appellant contends that he was not afforded a conflict-free counsel after submitting letters to the convening authority subsequent to trial personally raising the issue of ineffective representation. Appellant also asserts in Assignment of Error VI that his detailed defense counsel performed inadequately at trial by failing to vigorously pursue issues of command influence and inadequate Article 34, 10 U.S.C. § 834 advice to the convening authority. He also asserts that counsel was remiss in not interviewing Mrs. Iltis, the Government's primary witness, and by inadequate attempts to bring available defense witnesses before the court-martial. In responding, the Government has moved that we accept an affidavit from detailed defense counsel explaining his actions, which we hereby grant. Appellant also moved that we accept materials associated with Assignments of Error V and VI which he attached as Appendices A and B to his motion to file those supplemental assignments of error.

### A.

*Tape Recording of Attorney/Client Conversation*

Included in Appendix A are an affidavit from Appellant, long-distance tele-

phone bills, and a cassette tape recording of a purported telephone conversation between Appellant and his detailed defense counsel. Appendix B is a typed transcript of that tape and an affidavit from the secretary who prepared the transcript attesting to having accurately transcribed the cassette tape recording provided by appellate defense counsel. Appellant's affidavit was accepted earlier by order of the Court, but, with respect to the other material, additional authenticating evidence was requested, including the circumstances surrounding the taping, legal authority for its admission, and argument. Appellant's response submitted two affidavits which are hereby accepted for consideration. One affidavit is from an officer who knows Appellant and the defense counsel and identifies their voices on the tape. The other affidavit is from defense counsel and indicates, among other things, that the tape recording was done without his knowledge or permission.

Appellant cites authority and provides argument in support of our considering this tape recording. The Government, in opposing its admission, acknowledges that federal practice is governed by 18 U.S.C. § 2511(2)(d) which states that it is not unlawful for a party to a conversation to intercept it unless done for the commission of a criminal or tortious act and generally permits admission of such evidence at trial. The Government also notes that Military Rule of Evidence 317 ties into the federal wire interception statutes of which this provision is a part. The Government points out, however, that Alaska, where the conversation was recorded, has adopted the minority rule which holds that such wiretap evidence obtained without the other party's consent is not admissible based on the right to privacy provision of the Alaska Constitution. We also see another strong policy reason for excluding such a recording.

In our view, admission in evidence of Appellant's surreptitious recording of a conversation with his attorney runs counter to the policy of promoting confidential free flow of information between attorney and client. In the long run, such court action would deleteriously affect the relationship between all attorneys and clients. At present, the attorney/client privilege assures the client that, in general, nothing told to his attorney may be revealed to others without the client's permission. The law, in this regard, promotes a sense of mutual trust between attorney and client. That trust could be destroyed if recordings of attorney/client conversations made by one party, without the knowledge of the other, were admitted in evidence against the unknowing party.

■ In that event, both parties would be ever vigilant to protect themselves from just such situations. In particular, an attorney's undivided attention and loyalty to the client's interests could be distracted by this collateral concern. Candid, straightforward counsel advice might be subordinated by efforts to ensure that nothing is said that would sound bad on tape. We believe it of utmost importance that the attorney/client relationship not be eroded in this fashion, and we will not lend our support to such an erosion. Accordingly, for this reason, we deny admission of the tape, its transcript and the transcriber's affidavit, on grounds of public policy. We grant admission of the long-distance telephone call invoices, as evidence in support of Appellant's assertions concerning his efforts to make telephone contact with his attorney.[7]

## B.

### Representation after Trial

Appellant's basic complaint after trial related to counsel's failure to return all his telephone calls in a timely fashion and failure to keep in closer touch. For purposes of argument, we will accept the factual assertions by Appellant in this regard. Counsel's affidavit, in response, explains

7. All other motions to file documents, submitted by both Appellant and Government which have not been acted upon, are hereby granted. Appendices attached to pleadings for which there are no motions to file and which have not been acted upon by the Court are treated as motions to file and are hereby granted.

problems associated with communicating by telephone from New York to Alaska, exacerbated by certain conditions placed by Appellant on where and when such calls should be made. For these, and other reasons, counsel chose to communicate exclusively by mail. As a result, Appellant was left for long periods without hearing from his counsel. Accordingly, his apprehensions and concerns about post-trial actions are understandable.

While closer contact between attorney and client might have alleviated this problem, the lack of such contact, and the lack of more frequent communication between the two, did not adversely affect the presentations to the convening authority on Appellant's behalf. In this regard, we note that Appellant personally submitted four letters to the convening authority asserting errors and requesting clemency, all of which were covered by the staff judge advocate in his recommendations to the convening authority and considered by the convening authority before acting on the record. Furthermore, detailed defense counsel independently submitted two letters to the convening authority asserting errors and requesting clemency, with supporting argument, which were also considered by the convening authority.

Although better practice would have been for defense counsel to have coordinated and cleared these submissions with his client, counsel's affidavit indicates that he thought his letters to the convening authority were in accord with matters agreed upon with Appellant at the close of trial. Counsel's failure to discuss again with Appellant these planned actions before their submission to the convening authority did not prejudice the Appellant.

We also find that the effectiveness of counsel's post-trial representation of Appellant was not adversely affected by any purported conflict of interest. That conflict, argued here as having been generated by Appellant's complaints to the convening authority concerning defense counsel, is distinctly different from the conflict presented in *U.S. v. Leaver*, 32 M.J. 995

(C.G.C.M.R.1991). In *Leaver*, the accused terminated the attorney/client relationship with his defense counsel and expressly asked for another counsel. Here, Appellant never terminated the attorney/client relationship nor did he request assignment of another counsel. To the contrary, Appellant appears to have wanted the relationship with his already assigned counsel to continue, simply on a closer basis with more frequent communication. Despite the lack of that kind of close relationship, the submissions to the convening authority, by counsel and Appellant himself, assured that Appellant's interests were fully represented. Appellant's letters to the convening authority did not adversely affect counsel's post-trial representation of Appellant. Assignment of Error V is rejected.

### C.

#### *Representation at Trial*

With respect to the assertions of ineffective representation at trial in Assignment of Error VI, counsel's affidavit provides satisfactory explanation for his strategy and tactics. Applying the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *U.S. v. Scott*, 24 M.J. 186 (C.M.A.1987), we find this assignment of error to be absolutely without any merit.

#### *Conclusion*

Having reviewed the record in accordance with our responsibilities under Article 66, UCMJ, we have determined that the findings and sentence are correct in law and fact, and on the basis of the entire record should be approved. Accordingly, the findings and sentence approved below are affirmed.

Judges GRACE and BASTEK concur.